Bernard F. McCaffrey, J.
This matter involves the novel question of whether or not a bilateral Haitian decree of divorce is entitled to recognition in New York State based on comity.
The general principle of law is that a divorce decree obtained in a foreign jurisdiction by residents of this State, in accordance with the laws thereof, is entitled to recognition under the principle of comity unless the decree offends the public policy of the State of New York.
The most authoritative definition of the term public policy is to be found in Glaser v. Glaser (276 N. Y. 296, 301-302 [1938]), where Chief Judge Crane in the unanimous opinion of the Court of Appeals stated: “ What is the public policy of a State and where do we look to find it? The decisions of this court have given it a limited legal meaning, for in People v. Hawkins (157 N. Y. 1, at p. 12) this court said: ‘ The term “ public policy ” is frequently used in a very vague, loose or inaccurate sense. The courts have often found it necessary to define its juridical meaning, and have held that a State can have no public policy except what is to be found in its constitution and laws. (Vidal v. Girard’s Exrs., 2 How. [U. S.] 127; Hollis v. Drew Theological Semi *978 nary, 95 N. Y. 166; Cross v. U. S. T. Co., 131 N. Y. 343; Dammert v. Osborn, 140 N. Y. 40.) Therefore, when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records. ’ ” (Italics supplied.)
A further expression of the public policy of this State in these matters is where the Court of Appeals in Matter of Rhinelander (290 N. Y. 31, 36-37) stated: “ It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign states when rendered on the appearence of both parties, even when the parties go from this State to the foreign state for the purpose of obtaining the decree and do obtain it on grounds not recognized here.”
The most recent and sweeping expression of public policy was in Rosenstiel v. Rosenstiel (16 N Y 2d 64, 74 [July 9, 1965]) where a divided court held that jurisdiction in the Mexican court was obtained by the husband journeying to the City of Juarez and signing the municipal register, and by the wife appearing by power of attorney. In holding such Mexican divorce valid, the Court of Appeals stated: “ A balanced public policy now requires that recognition of the bilateral Mexican divorce be given rather than withheld and such recognition- as a matter of comity offends no public policy of this State.”
Thus, unless the public policy of this State has changed since the Rosenstiel decision of 1965, this decision is still the applicable law. However, a State’s public policy does not remain constant, but is subject to change depending upon the mores and needs of its residents and, in the final analysis, the then current public policy is what the Court of Appeals determines it to be.
• In this respect the most significant change affecting the residents of this State since the Rosenstiel decision is the Divorce Reform Law of 1967 (L. 1966, ch. 254) which extensively broadened the grounds for divorce and, in addition, as a prerequisite required that the parties submit to matrimonial conciliation procedures. It also incorporated therein section 250 of the Domestic Relations Law, whifeh reads as follows: ‘ ‘ Proof that a person obtaining a divorce^ in another jurisdiction was (a) domiciled in this state within twelve months prior to the commencement of the proceeding therefor, and resumed residence in this state within eighteen months after the date of his departure therefrom, or (b) at all times after his departure from this state and until his return maintained a place of residence within this state, shall be prima facie evidence that the person was domioiled in this state when the divorce proceeding was commenced.”
*979 It is of note that section 250, which is taken from section 2 of the Uniform Divorce Recognition Act, did not make foreign divorce decrees void per se. The Legislature did not adopt section 1 of the Uniform Divorce Recognition Act, which in effect voids a decree if domicile is determined as outlined in section 2 of the Uniform Divorce Recognition Act. Thus, section 250 does not establish a conclusive presumption of law that a foreign decree of divorce is invalid if obtained under the circumstances described therein. It, at best, establishes a rule of prima facie evidence as to whether or not one who obtained an out-of-State divorce remained domiciliary of New York. It is of further note in that the Divorce Reform Law followed the Rosenstiel decision, that, if the Legislature had intended to affect the Rosenstiel decision, it could have done so at that time. However, the contrary appears to be true as noted on page 108 of the 1966 Report of the Joint Legislative Committee on Matrimonial and Family Laws of the State Legislature, which reads in part as follows: “The committee proposes no legislation which would modify the Rosenstiel and Wood cases. It is the belief of the Committee that these decisions were judicial recognition of the intolerable limitations of presently existing New York divorce law. The recognition of the validity of foreign judgments and decrees is a subject which is particularly in the province of our courts. To intrude into this area by legislation may in the long run present extraordinarily difficult problems which would affect the general validity of foreign judgments and decrees. It is the Committee’s strong view that with a rationalized divorce law, New York’s judiciary will take appropriate action with respect to these decisions, if such actions are indeed necessary.”
Therefore, in that the court held in Rosenstiel that domicile is not ‘ ‘ intrinsically an indispensable prerequiste to jurisdiction ’ ’ (16 N Y 2d 64, 73, supra) and, since the jurisdiction of the Haitian courts is not dependent upon domicile, section 250 would not affect the validity of the Haitian decree unless this State, on the basis of comity, declines to recognize such a divorce as being offensive to our public policy. Furthermore, though section 250 is relevant to this matter, the court notes that the Legislature has clearly demonstrated its intention not to disturb, at this time, the effect of the Rosenstiel decision by enacting legislation during the 1973 session which repeals section 250 in its entirety; this bill was signed into law by the Governor, and becomes effective September 1, 1973. The legislative intent is specifically demonstrated by reference to the bill introduction memorandum, which reads in part as follows:
*980 “ To eliminate the confusion created by Section 250 of the Domestic Relations Law with respect to the efficacy of out-of-state divorces will revert to the common law which upheld the validity of such divorces when both parties to the divorce had appeared in the out-of-state court.
“ Section 250 of the new divorce law has left the lawyers and courts of New York State in a very real quandary with respect to out-of-state divorces and particularly Mexican divorces. With regard to the latter, the case law has been well decided in the cases of Rosenstiel vs. Rosenstiel and Woods vs. Woods, which upheld the validity of Mexican divorces when both parties appeared in the Mexican court. Section 250 merely complicates the case law in the aforementioned actions. The Section serves no useful purpose, and its repeal will obviate the necessity of many costly law .suits to interpret it.
“ The present Section supposedly refers only to the unilateral decrees of divorce but this is extremely arguable. It is unclear whether Section 250 was intended to leave intact the prior case law laid down in the Rosenstiel and Woods cases.
“ Our present case law has already determined that unilateral divorces are voidable. Even if the cases ought to be codified in this area, Section 250 does not do it.
“ The net result of repeal will be that the case law in these matters will continue to be the law of the State of New York until proper statutes are drafted and become law. In the meantime, we won’t have the present uncertainty.”
Therefore, the only question remaining is whether it is offensive to the public policy of this State to recognize a bilateral Haitian divorce where one party appears in person in Haiti and the other appears there by power of attorney.
Thus, in this matter before the court involving an application to amend a separation agreement and to modify a Haitian divorce decree, the parties were married January 25, 1959 in New York City; two children were born of the marriage; on March 10,1972 the parties entered into a separation agreement; on May 12,1972 the respondent herein, Harvey Harris Kraham, went to Haiti in person and the petitioner appeared by counsel. Thereafter the respondent obtained a bilateral divorce on the grounds of incompatibility incorporating therein by reference the separation agreement executed March 10, 1972.
The parties have stipulated that the .separation agreement be amended and that an order of the .Supreme Court of the State of New York be entered modifying and amending the said agreement and Haitian divorce decree particularly as to the alimony *981 and support provisions contained in the Haitian decree. There is no problem relative to the upward modification of the support for the children had it been incorporated in a foreign decree (Family Ct. Act, § 466, subd. [c]) nor is there any issue as to the upward modification of the alimony provision as both parties have stipulated to the same. However, as to the relief sought to modify the foreign decree, the issue still remains as to whether a bilateral Haitian decree is entitled to be recognized in New York on the basis of comity.
In reviewing any foreign decree prior to the recognition the prime factor to be considered by the court is the public policy of the State of New York towards granting recognition of such a decree on the basis of comity. In considering the public policy the court would review the jurisdiction, if any, the foreign court had over the parties; .similarity of the grounds granted with that which would be permitted in New York and, if not, then whether or not such grounds would be repugnant to the public policy of the State of New York; the 1967 Divorce Reform Law of New York, which in addition to broadening the grounds for divorce also sets forth as a prerequisite that the parties are mandated to either wait a prescribed period of time or complete conciliation procedures prior to serving a complaint for a divorce proceeding, this applies even to so-called no fault aspects of the Divorce Reform Law, .such as separation after one year.
As to the grounds of 11 incompatibility ” it is sufficient to note that though this is not a stated or sufficient grounds for divorce in New York pursuant to the provisions of the Divorce Reform Law of 1967, nevertheless, it is well established that such a ground in a foreign decree is not deemed to be offensive to the public policy of New York (Rosenstiel v. Rosenstiel, 16 N Y 2d 64, supra; Rios v. Rios, 34 A D 2d 325, affd. 29 N Y 2d 840).
The court notes that the Haitian Divorce Law of June 28, 1971, in addition to eliminating the requirement as to making of any election of domicile, provides that the Haitian court acquires jurisdiction when the party seeking the divorce personally appears before the Haitian court and both parties specifically submit to the Haitian jurisdiction. The other spouse may appear personally or by a duly designated attorney in fact. The Haitian law further provides that the Judge “ make all necessary recommendations for a reconciliation” and permits the ease to be docketed only after finding reconciliation cannot be effected. The grounds for a Haitian divorce are (1) incompatibility of character; (2) separation for one year or more; (3) cruelty.
*982 New York State has a .strong well-established policy of over 150 years of recognition of bilateral foreign decrees where the same are granted on grounds and circumstances which are determined not to be offensive to the public policy of New York. Because New York was what might be termed a .strict divorce State, it may be argued that this policy of recognition of foreign bilateral decrees has been based more on necessity rather than a sophisticated policy of acceptance of bilateral foreign decrees. Even arguendo, assuming this to be so, it would only be relevant as to whether the adoption of the Divorce Reform Law with the broadening of the grounds for divorce eliminated the ‘ ‘ necessity ” for granting of comity to foreign decrees. However, as noted, the recognition of bilateral foreign decrees is a well-established policy of New York State and before it is overturned there should be. an overwhelming need to do so, and a conclusive showing that the public policy of New York has changed in such a manner since Rosenstiel and the adoption of the Divorce Reform Law to henceforth deny comity to a Haitian bilateral divorce decree which was obtained under the circumstances herein. A further consideration is the dilemma that the city and town clerks have encountered in the issuance of marriage licenses predicated on bilateral Haitian divorce decrees and, of course, the continuing traumatic uncertainties of the parties themselves as to their marriage status and present and future property rights. All of which considerations are further compelling reasons why the validity of the bilateral Haitian divorce decree should be determined, rather than attempting to provide for the relief requested in a piecemeal fashion and, therefore, giving rise to possible continuous needless litigation.
It is further noted that in this instance the parties living separate and apart for over one year in accordance with the provisions of a .separation agreement entered into in New York would be sufficient grounds for a New York divorce. Furthermore, it cannot be said that the obtaining of a foreign decree in this instance was that offensive to our public policy, for the New York courts have consistently held this to be so even where the parties go from New York to a foreign country for purposes of obtaining a divorce on grounds not recognized here. (Matter of Rhinelander, 290 N. Y. 31, supra.)
In this respect, subsequent to the adoption of the Divorce Reform Law, the Court of Appeals in Gleason v. Gleason (26 N Y 2d 28, 39), has further set forth the public policy where it stated:6 ‘ implicit in the statutory scheme is the recognition that *983 it is socially and morally undesirable to compel a couple whose marriage is dead to remain subject to its bonds.”
Furthermore, it is not a part of the public policy of this State to require the parties who have mutually agreed to an upward modification of the alimony and support provisions to go to the difficulty and expense of returning to Haiti. Rather, where as here when a foreign decree is granted recognition on the basis of comity then the alimony and .support provisions of the decree should be construed in a functional manner to serve the best interests of the residents of this State.
Thus, in accordance with the Rosenstiel and Wood cases (16 N Y 2d 64, supra), and for the reasons set forth herein, the court finds that for purposes of the relief sought herein the bilateral Haitian divorce decree obtained by the respondent is entitled to recognition in New York based on comity, and the relief sought in the petition is granted.