OPINION OF THE COURT
Albert E. Tait, Jr., J.
Plaintiff Barbara Tatum Blackburn moves for summary judgment in this action for various relief based upon a judgment of divorce which she obtained against defendant Donald Allen Blackburn in the Fulton Superior Court of the State of Georgia.
Mr. and Mrs. Blackburn entered into a separation agreement dated November 15, 1973, which was incorporated into a judgment of divorce granted in Georgia on April 12, *620 1974. Inter alia, the agreement provides that Mr. Blackburn shall pay $65 per week as support for the only child of the marriage, Elizabeth Laine Blackburn; that Mr. Blackburn shall convey to Mrs. Blackburn by warranty deed real property located at 1292 Dunwoody Lane, N. E. Atlanta, Georgia; and that he shall pay all medical and dental bills for the child.
On October 19, 1979, effective October 26, 1979, the Family Court, of the State of New York, in New York County, issued a temporary order requiring Mr. Blackburn to pay child support of $40 per week. On December 3,1979, effective December 7, 1979, the Family Court, New York County, issued a temporary child support order of $50 per week. A hearing examiner’s report dated August 8, 1980, issued to the Family Court, New York County, provides in part — “On consent — Arrears through June 6,1980 set at $270.00. Respondent shall pay $270.00 in one lump sum on or before September 1, 1980 to the court to be sent to Petitioner. Order of $50.00 per week shall continue. However, support payments of $50.00 per week shall be suspended for the period June 1 — Sept. 1,1980 since the child resides with Respondent during this period. Payments of support shall resume on Sept. 1, 1980 to be made to the court to be sent to Petitioner.” An order dated February 3, 1981 of the Family Court, Delaware County, found that Mr. Blackburn was chargeable with child support but was financially unable to contribute at that time; the order also granted Mrs. Blackburn’s motion for a civil judgment based upon arrears “from the date of New York City Family Court order.” A “Support Collections Unit Statement of Arrears,” dated May 20, 1981 for the period of December 7, 1979 to June 2, 1980, based on the order of October 19, 1979 for $50 weekly, states a total arrears of $700. Based upon a verification of arrears from the Family Court in New York City, the Family Court in Delaware County issued an order dated June 19, 1981 modifying its February 3, 1981 order and setting arrears at $700.
Mrs. Blackburn commenced the present action on March 14, 1981. Her first cause of action in the amended complaint seeks $18,835 in child support arrears from April 12, 1974 until October 19, 1979; her second cause of action *621 seeks $1,900.25 for medical and dental expenses for the child from April 12,1974 until the present; the third cause of action alleges Mr. Blackburn has failed to convey the property at Dunwoody Lane by warranty deed and asks the court to direct him to do so; the fourth cause of action seeks child support arrears of $20,380 from November 15, 1973 until October 19, 1979; the fifth cause of action seeks $1,900.55 for the child’s medical and dental bills incurred since November 15, 1973.
Mrs. Blackburn asks that the judgment of the Superior Court of the County of Fulton, State of Georgia, be made a judgment of the State of New York. A plaintiff with a judgment from a sister State must convert that judgment into, a New York judgment before it can be enforced in this State (Siegel, New York Practice, § 434, p 573). This can be done in one of three ways. If the judgment was not obtained by default or by confession of judgment (see CPLR 5401) it can be filed with a County Clerk and then enforced as if it were a judgment of the Supreme Court of the State of New York (CPLR 5402; see, generally, 6 Weinstein-Korn-Miller, NY Civ Prac, par 5402.01 et seq.).
A sister State judgment can also be enforced by means of a motion for summary judgment in lieu of a complaint (CPLR 3213). The advantage of this procedure is that, like the CPLR article 54 registration, it is quick and moreover any judgment qualifies (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3213:2, p 829). CPLR 3213’s procedure has been described as “in effect a plenary action brought on with the facility of a mere motion” (id., CPLR C3213:l, p 829).
The third method of enforcement is to break these two steps up, that is, to commence a plenary action and move for summary judgment thereon (see CPLR 5406; Ehrenzweig v Ehrenzweig, 86 Misc 2d 656, 662, affd 61 AD2d 1003). The action at bar is a valid and proper example of this third method.
The general rule is that a sister State divorce decree based on valid jurisdiction is entitled to full faith and credit under the United States Constitution (Olmstead v Olmstead, 190 NY 458, affd 216 US 386; 1 Foster-Freed, *622 Law and the Family, § 9:1). While the full faith and credit clause (US Const, art IV, § 1) does not state that a judgment must be final before it is entitled to recognition (see Barber v Barber, 323 US 77 [Jackson, J., concurring opn]), such a requirement has been read into the clause (Williams v Williams, 130 NY 193; 1 Foster-Freed, id., § 9:3).
The wisdom and present validity of the finality requirement in New York is doubtful, however. “For a long time, New York had a parochial attitude toward the monetary aspects of sister-state divorce decrees. Our courts would recognize and enforce the decrees’ money obligations only to the extent required by the Full Faith and Credit clause of the federal constitution, and that usually mandated recognition only for arrears judgments already rendered by the sister-state tribunal for past-due money, or at least arrears situations in which all the plaintiff was seeking was a judgment (and then its enforcement) in respect of arrears already accumulated under the sister-state decree and final under the sister-state’s law. We would for a long time refuse to go any further than that, such as by adopting the sister-state decree as our own for all future purposes. Adopting it would enable the spouse, usually the wife — assuming New York personal jurisdiction were now available against the husband — to obtain modifications of the decree in New York without having to trek back to the rendering court, which could be as far as a continent away. It was in the 60s that New York began to come around, and to be more receptive, as the courts in a number of other states had been, to full ‘adoption’ of the sister-state decree, at least in those instances where the parties had roots, or now had roots, in New York.” (Siegel, 1979 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, 1981-1982 Pocket Part, CPLR C3213:2, p 247.)
This new approach is evident in Mittenthal v Mittenthal (99 Misc 2d 778). Plaintiff moved pursuant to CPLR 3213 to convert a New Jersey divorce decree into a judgment of New York State. The New Jersey decree contained both final and nonfinal provisions — a fixation of arrears, as well as modifiable directions to pay alimony, child support, and other obligations.
*623 “Clearly, New York is obliged by section 1 of article IV of the Constitution of the United States to give full faith and credit to a judgment of a sister State. The United States Supreme Court has held that full faith and credit must be given to a sister State judgment if that judgment is definite and certain and for a specific amount (Barber v Barber, 21 How [62 US] 582). But if the judgment is subject to a modification by the rendering court, it need not be afforded full faith and credit (Lynde v Lynde, 181 US 183, reconciled with Border v Barber, supra, in Sistare v Sistare, 218 US 1).
“While the Federal mandate prescribes minimum requirements with which the State must comply, there is nothing in the Federal Constitution to prevent a State from enforcing a sister State’s judgment which does not attain the level of mandatory full faith and credit standards.” (Mittenthal v Mittenthal, supra, p 779).
The court found the entire New Jersey decree should be recognized in this State.
Mittenthal’s result is consistent with the breadth of this court’s powers. The Family Court has jurisdiction to enforce and modify orders and decrees of sister States which provide for alimony (Family Ct Act, § 461, subd [b]; § 466, subd [c]). Supreme Court has this same jurisdiction through its constitutional grant of plenary powers (NY Const, art VI, §§ 7,13, subd d; Matter of Seitz v Drogheo, 21 NY2d 181; see Mittenthal v Mittenthal, supra, p 780). It would be incongruous and perhaps unconstitutional to allow Family Court to enforce and modify support provisions, thereby converting at least part of a sister State decree, yet prevent Supreme Court from exercising that same function.
Mittenthal (supra) also reflects a pragmatic approach to interstate relations in the area of divorces. Full faith and credit is an essential part of the Federalist glue which holds the republic together; there is no reason why a State cannot enhance this bond and recognize more than Federalism requires. Indeed, given the mobility of the population and the frequency of changes in divorce provisions, it is inevitable that enforcement and modification of sister State decrees will be sought in New York. The courts of *624 this State should be able to facilitate this process without being impeded by a constitutional distortion; the finality of a sister State decree is a condition precedent to its mandatory recognition, not its permissive recognition.
While Mittenthal (supra) does not discuss any limitations upon the court’s discretion in extending permissive full faith and credit, a policy of basic fairness should apply. A decree should not be converted if it would violate a defendant’s due process or equal protection rights (US Const, 14th Arndt; NY Const, art I, §§ 6, 11; cf. Griffin v Griffin, 327 US 220) if the original court lacked jurisdiction (cf. 1 Foster-Freed, Law and the Family, § 9:1) or if conversion would violate the public policy of New York (cf. Matter of Kraham v Kraham, 73 Misc 2d 977, 981).
Defendant claims he was not represented by counsel during the separation agreement negotiations or the divorce proceedings. This fact alone without a showing of fraud or duress does not violate the public policy of New York (cf. Galyn v Schwartz, 77 AD2d 437, 439). Also, theré is no showing that lack of representation would be a ground for attack of the decree in Georgia, or that principles of comity compel New York to allow such a defense (Feinberg v Feinberg, 40 NY2d 124, 128).
Defendant does argue that full faith cannot be given since Georgia decrees have been modified in some situations (citing Farmer v Farmer, 147 Ga App 387; Clark v Clark, 150 Ga App 602). Assuming that the decree is modifiable and not final, under Mittenthal (supra) it may still be recognized. Defendant has shown no reason why conversion should be denied. The Georgia decree will be considered as a judgment of the State of New York.
Is plaintiff’s action to enforce the Georgia decree barred by the Statute of Limitations? Section 110-1001 of the Code of Georgia provides in part that:
“A judgment shall become dormant and shall not be enforced:
“1. When seven years shall elapse after the rendition of the judgment before execution is issued thereon and entered on the general execution docket of the county wherein such judgment was rendered; or
*625 “2. Unless entry is made on the execution by an officer authorized to levy and return the same and such entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; or
“3. Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made and due written notice of such effort, specifying the time of the institution of the suit or proceedings, the nature thereof, the names of the parties thereto and the name of the court in which it is pending, is filed by the plaintiff in execution or his attorney at law with the clerk and entered by said clerk on the general execution docket, all at such times and periods that seven years will not elapse between such entries of such notices or between such an entry and a proper entry made as prescribed in paragraph 2.”
Defendant argues that no execution or entry on the general execution docket was made within seven years of the judgment date and therefore the action is dormant. Plaintiff argues that the statute was tolled by defendant’s absence from the State. Section 3-805 of the Code of Georgia provides in part “[i]f the defendant * * * shall remove from this State the time of his absence from the State, and until he returns to reside, shall not be counted or estimated in his favor.” However, this tolling provision “relates to causes of action where personal service or its legal substitute is required in the bringing of an action. It has no reference to, nor does it repeal, the plain provisions of the statute in respect to dormant judgments” (Crawford v Boyd, 62 Ga App 885; accord Tift v Bank of Tifton, 60 Ga App 563; Stanley v Stanley, 141 Ga App 411). Therefore defendant’s absence did not toll the statute. Plaintiff’s failure to make an execution or entry on the docket bars her from enforcing the judgment pursuant to subdivisions 1 and 2 of section 110-1001 of the Code of Georgia.
Subdivision 3 requires a bona fide effort to enforce the judgment and entry of such effort on the execution docket, within seven years of the judgment date. The present action was commenced on March 14, 1981, within seven years of the judgment date (April 12, 1974), and is a bona *626 fide effort to enforce the judgment. However, the pendency of this action was not entered on the docket in Georgia.
Is this omission fatal? The reason for the recording requirement is “(s)imply as a protection to the public, so that any person interested could go to the original entry of the recording of the execution and determine whether or not the execution had become dormant” (Pope v United States Fid. & Guar. Co., 198 Ga 304, 307). The person most interested in the status of defendant’s divorce judgment obligations was plaintiff, and any protection afforded the public by recording would have been minimal.
Moreover, the Georgia courts have not required strict compliance with the recording requirement. In Pope v United States Fid. & Guar. Co. (supra, p 307) the court considered a former requirement that the entry be made “ ‘on the original record of the execution.’ ” The page with the original entry was filled up, and so the clerk simply made a note referring to a subsequent page where a new entry was made. The clerk’s reference was held in “substantial compliance” with the requirement, and the judgment did not become dormant (p 308). In the case at bar, plaintiff’s active pursuit of support in New York coupled with the commencement of the present action before the seven years expired constitutes a substantial compliance with paragraph 3.
Plaintiff has also fully complied with the common-law root of subdivision 3. This paragraph is a recent codification of an old equitable rule of the Georgia courts (see Editorial Note, Ga Code Ann, Book 30A, § 110-1001, p 376). A plaintiff must “ ‘enforce his execution in the courts of the county at such times and periods that seven years will not elapse between such attempts or between such an attempt and a proper entry’” (Editorial Note, Ga Code Ann, Book 30A, § 110-1001, p 376). According to the Supreme Court of Georgia “the rule seems to be * * * that any bona fide action of the plaintiff which shows that he intends to keep the action alive will prevent its dormancy” (Long v Wight, 82 Ga 431, quoted in First Nat. Bank of Bainbridge v McCaskill, 27 Ga App 391, 393). Apparently this is still the common law of Georgia, independent of the *627 statute. Plaintiff has shown that she intends to keep the action alive and therefore the judgment is not dormant.
Plaintiff is similarly not guilty of loches.
Defendant next argues that plaintiff has already sought and obtained collection of some arrearages; that by not including all her arrearages in one action she has split her cause of action and is now collaterally estopped from recovering arrearages in the action at bar (see 3 Carmody-Wait 2d, NY Prac, § 16:16, p 90).
As recited earlier, between October 19, 1979 and June 19, 1981 plaintiff obtained numerous orders in New York regarding defendant’s obligation of child support and arrears. These orders were based upon an original assumption of jurisdiction by the Family Court in New York County pursuant to the Uniform Support of Dependents Law (USDL), codified as sections 30 through 43 of the Domestic Relations Law. This law confers a limited grant of jurisdiction upon Family Court (see Domestic Relations Law, §§ 34, 35) for the purpose of securing support for needy wives, children, and relatives (Domestic Relations Law, § 30).
This jurisdiction is independent of any other basis for a support obligation (Lebedeff v Lebedeff, 17 NY2d 557; Matter of Diann P. v Gene P., 86 Misc 2d 844, 848). The USDL “shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter” (Domestic Relations Law, § 41, subd 1). “To construe [a] USDL order as a modification of the divorce judgment would impair [plaintiff’s] right to seek a money judgment for arrears under the original divorce judgment, a result clearly contrary to the USDL’s character as an ‘additional or alternative’ remedy” (Nichols v Bardua, 74 AD2d 566, 567; see, also, Matter of Coniglio v Coniglio, 104 Misc 2d 491, 492-493).
The orders of Family Court directing the payment of child support and setting arrears all relate to the USDL and leave plaintiff’s ability to enforce the Georgia decree intact and untouched. Plaintiff is not collaterally estopped *628 from bringing the present action because the issue that has been considered by Family Court — her right to child support under the USDL — is distinct from the issue at bar — her right to child support under the Georgia decree. The present action can be entertained pursuant to this court’s plenary and constitutional power to enforce that decree (NY Const, art VI, § 7).
Plaintiff concedes the existence of factual issues on the causes of action which sound in contract. Therefore the final issue is whether summary judgment is warranted on the causes of action based on the decree.
The first cause of action seeks $18,835 in child support arrears for the period of April 12,1974 to October 19,1979. Plaintiff submits no proof of the amount she received during that period, and defendant states that he does not know the exact amount he paid for that period. The amount due cannot be calculated until the amount already received has been established, and subtracted from the total obligation. There is a question of fact regarding this cause of action.
The second cause of action seeks $1,900.55 in arrears on medical and dental expenses for the child. A list of these expenses is contained in plaintiff’s bill of particulars, but no verification is evident on the court’s copy. The bill before the court is therefore hearsay, lacks probative value, and will not support a grant of summary judgment on this issue (cf. Starbo v Ruddy, 66 AD2d 950; Matter of D’Onofrio, 97 Misc 2d 250, 254).
The third cause of action requests the court to direct defendant to convey a house on Dunwoody Lane in Atlanta to plaintiff by warranty deed. By converting the Georgia decree into a judgment of New York the court has effectively made such a direction. No further enforcement of this provision is sought and none is granted.
The motion of plaintiff for summary judgment is granted insofar as the Georgia divorce decree dated April 12, 1974 is entitled to full faith and credit and is recognized as a judgment of the State of New York. The motion is denied in all other respects.