Myrna Labow, Appellant, v Ronald Labow, Respondent.

First Department, February 8, 1990

## APPEARANCES OF COUNSEL

*Myrna Labow,* plaintiff *pro se.*

*Daniel Cobrinik* of counsel *(James Kaufman* with him on the brief; *Levitt Greenberg Kaufman & Goldstein, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

CARRO, J.

In 1974, plaintiff Myrna Labow instituted an action for divorce, in Connecticut, against defendant Ronald Labow; a divorce was granted by the Connecticut court on August 28, 1978, which found that the marriage had irretrievably broken down. The Connecticut judgment was subsequently filed and entered in New York on October 10, 1978 and has since been accorded full faith and credit on numerous occasions in Supreme Court, the Appellate Division and the New York Court of Appeals. *(See, e.g.,* 133 AD2d 564, 565-566; 86 AD2d 336, 337, *affd* 59 NY2d 956.)

In the decade since the divorce, the parties have been engaged in constant litigation. In order to review the entire tortured history of the case, we would be required to write a twentieth century version of Charles Dickens' Bleak House. Suffice it to say that, over the years, defendant, an attorney and successful investor of great wealth, has habitually paid support obligations only when he has been held in, threatened with, or jailed for contempt.

In the most recent episode of the Labow saga, plaintiff sought two orders. The first of these was an order directing defendant to post security for future alimony payments, in the amount of $1,000,000, pursuant to Domestic Relations Law § 243. Plaintiff fears, not unjustifiably, that cessation of the weekly alimony payments of $4,500 is imminent. Of great relevance in this regard is the fact that defendant has apparently sold both his former residence, an estate located in Katonah, New York, for $2,400,000, and his Upper East Side cooperative apartment, and that defendant's present wife and children have moved to Sun Valley, Idaho, where plaintiff believes defendant will establish permanent residence. Plaintiff also sought an order holding defendant in contempt, for failing to provide her with a leased Mercedes Benz automobile pursuant to the alimony award.

The IAS court declined to issue either order. In denying the motion seeking security, the court stated that "[w]hile [it] agrees with plaintiff that this is a case which cries out for the posting of security, there is no question that the Court is without authority to order same under DRL Sec. 243 since the underlying divorce action was not granted on any of the grounds set forth in DRL Sec. 170."

■ While we agree with the IAS court that the facts of the instant matter do indeed cry out for security, we do not agree that the court was not empowered to grant plaintiff the relief sought in that regard.

When enacted in 1962,* Domestic Relations Law § 243 read as follows:

*"§ 243. Security for payments by defendant in action for divorce, separation or annulment; sequestration*

"Where a judgment rendered or an order made in an action in this state for divorce, separation or annulment, or for a declaration of nullity of a void marriage, *or a judgment rendered in another state for divorce upon the ground of adultery,* or for separation or separate support and maintenance for any of the causes specified in section two hundred, or for relief, however designated, granted upon grounds which in this state would be grounds for annulment of marriage or for a declaration of nullity of a void marriage, upon which an action has been brought in this state and judgment rendered therein, requires a husband to provide for the education or

---

* Domestic Relations Law § 243 was enacted on April 4, 1962; however, the effective date of the statute was September 1, 1963.

maintenance of any of the children of a marriage, or for the support of his wife, *the court, in its discretion, also may direct him to give reasonable security, in such a manner and within such a time as it thinks proper,* for the payment, from time to time, of the sums of money required for that purpose. *If he fails to give the security,* or to make any payment required by the terms of such a judgment or order, whether he has or has not given security therefor, or to pay any sum of money for the expenses of the plaintiff or for her support and maintenance or the support and maintenance of the children during the pendency of the action which he is required to pay by an order, *the court may cause his personal property and the rents and profits of his real property to be sequestered, and may appoint a receiver thereof.* The rents and profits and other property so sequestered may be applied, from time to time, under the direction of the court, to the payment of any of the sums of money specified in this section, as justice requires; and if the same shall be insufficient to pay the sums of money required, the court, on application of the receiver, may direct the mortgage or sale by the receiver, under such terms and conditions as it may prescribe, of sufficient of his real estate to pay such sums." (L 1962, ch 313, § 10 [derived from Civ Prac Act § 1171]; emphasis added.)

In 1963, minor amendments, denominated "corrections" were made, "to clarify the circumstances in which the court may order the husband to give security or direct sequestration of property in matrimonial actions." (1963 NY Legis Ann, at 61; *see,* L 1963, ch 685, § 11, for specific amendments.) None of these changes concerned the circumstances under which security would be required or altered the discretionary nature of the relief. There were no further amendments to Domestic Relations Law § 243 until 1980.

Because the Legislature and courts were restrictive, as a matter of policy, in this regard, New York courts, while recognizing divorces obtained in a foreign jurisdiction on grounds other than adultery, declined to enforce judgments for unpaid alimony under such foreign decrees of divorce. *(See, Beeck v Beeck,* 211 App Div 720 [1st Dept 1925] [plaintiff not permitted to enforce judgment under Civ Prac Act § 1171— provision from which Domestic Relations Law § 243 was derived *(see,* Historical Note and Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 243, at 736)—where foreign divorce was on ground of cruelty rather than adultery]; *accord, Chamberlain v Cham-*

*berlain,* 32 Misc 2d 308, 309, 311-312 [Sup Ct, Kings County 1961] [declining to grant sequestration under provisions of Civ Prac Act § 1171 where no showing that Virginia decree was granted on grounds authorized by New York statutes regarding similar relief].)

Thus, when originally enacted, and until it was subsequently amended in 1980, Domestic Relations Law § 243 provided for the protection of security only where the grounds of divorce was adultery. Prior to September 1, 1967, New York recognized only one ground for divorce, that of adultery. *(See,* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 170, at 590; *see also,* Divorce Reform Act [L 1966, ch 254] § 2, as amended by L 1967, ch 648, § 1.) While the grounds by which a divorce could be granted were expanded to include (1) cruel and inhuman treatment; (2) abandonment (3) imprisonment (4) adultery (5) separation by either decree or (6) written agreement, Domestic Relations Law § 243 went unamended at that time. However, in 1980, the Legislature, in recognition of changing and more progressive divorce policies, revised Domestic Relations Law § 243 so as to render it gender neutral and to substitute in the sentence "[w]here a judgment" reference to Domestic Relations Law § 170 in place of adultery.

Both the 1967 amendment to Domestic Relations Law § 170 and the 1980 amendment to Domestic Relations Law § 243 reflect a policy of inclusion, rather than exclusion. *(See, Blackburn v Blackburn,* 113 Misc 2d 619, 622, 628 [Sup Ct, Delaware County 1982] [discussing generally the "more receptive" atmosphere in New York regarding foreign divorces].) It is clear that the amendment to Domestic Relations Law § 243, in particular, was designed to be liberally construed and to provide, with a single broad stroke, for the protection of parties similarly aggrieved, regardless of the grounds by which they were divorced. *(See also,* CPLR 104, which provides that "[t]he civil practice law and rules shall be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding".)

Furthermore, cases decided after Domestic Relations Law § 170 was amended also reflect a more liberal trend. Although there are no cases directly on point, courts have accorded foreign divorces and related decrees full faith and credit, and have, contrary to the contentions of defendant, permitted the enforcement of, *inter alia,* financial provisions of matrimonial judgments or decrees of a foreign jurisdiction. In *Ehrenzweig v*

*Ehrenzweig* (86 Misc 2d 656 [Sup Ct, Kings County 1976], *affd* 61 AD2d 1003 [2d Dept 1978]) the court, applying CPLR 5401, held that plaintiff's Connecticut divorce judgment was entitled to full faith and credit, and that plaintiff was therefore entitled to file the divorce in New York and, also, entitled to any unpaid installments of alimony and support *(supra,* 86 Misc 2d, at 665). Neither Supreme Court nor the Appellate Division addressed the underlying grounds of divorce, other than to say that there had been a separation agreement. Similarly, in *Wilder v Wilder* (93 Misc 2d 247 [Sup Ct, Suffolk County 1978]), the court ruled that an Alabama decree was entitled to full faith and credit, although it declined, for other reasons, to grant the relief requested *(supra,* 93 Misc 2d, at 251-253).

██ In the matter herein, we first conclude that the IAS court could, in fact, in its discretion, order respondent to post security for future alimony arrears under Domestic Relations Law § 243. Second, we note, as plaintiff pointed out, that in any event, the parties have previously litigated this issue in 1983 and that, when Special Term Part 5 granted an order requiring defendant to post security, no appeal was taken. The doctrine of collateral estoppel must therefore preclude defendant from now relitigating in the proceedings herein, since this issue has already been raised and decided. *(Matter of Hee K. Choi v State of New York,* 74 NY2d 933, 936 [Nov. 30, 1989].)* In so deciding, we observe that there has been no showing that defendant did not have a full and fair opportunity to litigate the matter; thus there is no reason not to apply the doctrine in the instant case. *(Matter of Hee K. Choi v State of New York, supra; see also, Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 73 [1969]; *compare, Wolfe v Wolfe,* 64 AD2d 700, 701 [2d Dept 1978]; *Enthoven v Enthoven,* 167 Misc 686, 689, 693 [Sup Ct, Queens County 1938], *affd* 256 App Div 813 [1939].)* Moreover, in applying the doctrine here, we observe that defendant, an attorney and sophisticated litigant, and the *pro se* plaintiff, who demonstrates legal savvy many attorneys aspire to attain, are not at all abashed about their litigious relationship or taking legal action to protect any rights, real or imagined.

Accordingly, we exercise our discretion, and grant plaintiff's request for security. Defendant is directed to post security for future payments, in the sum of $250,000 to be filed within 30 days after service of a copy of our decision and order.

██ Insofar as the signing of a lease for a Mercedes Benz

automobile is concerned, a review of the numerous orders makes clear to us that, contrary to plaintiff's claim, both parties are to sign the lease. We therefore direct the parties to arrange a time and place which is mutually convenient or, if necessary, inconvenient, so that they may simultaneously do so without further ado. We decline to hold defendant in contempt, as it appears that he has made efforts to comply with this aspect of the orders appellant has accused him of violating. We find plaintiff's claim that by signing the lease, she is placing herself at financial risk, unpersuasive. Should defendant fail to pay, she may at that time seek an order of contempt.

As a final comment, we observe that all litigation at some time must end. While we are certain that the parties, when they were wed, vowed that their relationship would last until death did them part, they are now long divorced, and should consider ceasing engaging in the behavior which causes them to litigate relentlessly.

Accordingly, the order of the Supreme Court, New York County (Eve Preminger, J.), entered on May 5, 1988 which, *inter alia,* denied plaintiff's motion for an order directing defendant to post security in the amount of $1,000,000, and the order of said court entered on December 23, 1988 which granted reargument and adhered to its May 5, determination, should be unanimously modified, on the law, the facts, and in the exercise of discretion, to the extent of granting plaintiff's motion for an order directing defendant to post security, in the amount of $250,000, for future alimony payments, and further directing (a) both parties to simultaneously sign a car lease, and (b) defendant to execute a guarantee for said lease, without costs, and otherwise affirmed.

KUPFERMAN, J. P., ASCH, ROSENBERGER and SMITH, JJ., concur.

Orders, Supreme Court, New York County, entered on May 5, 1988 and December 23, 1988, respectively, unanimously modified, on the law, the facts, and in the exercise of discretion, to the extent of granting plaintiff's motion for an order directing defendant to post security, in the amount of $250,000 for future alimony payments, and further directing (a) both parties to simultaneously sign a car lease, and (b) defendant to execute a guarantee for said lease, and otherwise affirmed, without costs and without disbursements.