914 P.2d 637

George C. CHERPELIS, Petitioner–
Appellant,

v.

Barbara Jane CHERPELIS,
Defendant–Appellee.

No. 15885.

Court of Appeals of New Mexico.

Feb. 15, 1996.

Certiorari Denied March 22, 1996.

Barbara L. Shapiro, Albuquerque, for Appellant.

Joseph J. Mullins, Albuquerque, for Appellee.

## OPINION

BOSSON, Judge.

1. This appeal arises from an unsuccessful attempt by George Cherpelis (Husband) to terminate alimony awarded to his former wife, Barbara Jane Cherpelis (Wife), upon their divorce. Husband argues primarily two issues: (1) whether public policy requires termination of alimony or a presumption to that effect when the recipient spouse and a live-in companion conduct their lives as if they were married and (2) whether the doctrine of issue preclusion binds the non-moving party with respect to prior judicial findings regarding alimony unless that party proves changed circumstances. We affirm the district court on these and all other issues.

## BACKGROUND

2. The parties were divorced in 1982 after twenty-eight years of marriage. During the marriage, Husband worked in his law practice and Wife was a homemaker. The divorce decree incorporated a settlement agreement which called for Husband to pay Wife alimony of $3200 per month which was reduced to $2000 per month shortly thereafter. The parties agreed that alimony would terminate if Wife remarried or upon the death of either party; no other condition was placed on the duration of the alimony. For almost ten years, Husband made alimony payments of $2000 per month.

3. On October 16, 1991, Husband moved to terminate or modify alimony because of changed circumstances, citing his diminished financial position and Wife's improved earning potential as Wife had begun working as a substitute teacher after the divorce. In August 1992, after an evidentiary hearing, the trial court reduced Husband's alimony obligation to $650 per month. Neither party appealed.

4. Approximately fifteen months later, in October 1993, Husband again sought to terminate alimony, alleging changed circumstances. As evidence of changed circumstances, Husband demonstrated that Wife's relationship with a live-in companion provided her with additional income, reduced her expenses, and allegedly reduced her need. Husband also alleged that his income was substantially less than had been anticipated by the trial court in 1992. The trial court referred the issue to a special master who recommended that the court deny Husband's motion. The trial court adopted the special master's recommendations and continued alimony at $650 per month. The trial court also awarded attorney fees of $8880.06 to Wife.

## EFFECT OF A LIVE–IN RELATIONSHIP UPON ALIMONY

5. At trial, Husband produced evidence regarding Wife's economic relationship with a live-in companion. They jointly purchased a new car. She had access to his bank accounts under certain conditions. They shared monthly household expenses, such as utilities, house repairs, and taxes. They shared their economic lives much as husband and wife.

6. Husband acknowledges that New Mexico does not recognize a "de facto" marriage. *Hazelwood v. Hazelwood,* 89 N.M. 659, 661, 556 P.2d 345, 347 (1976). Under New Mexico law a live-in relationship is not, by itself, grounds for terminating alimony, even where parties hold themselves out as husband and wife. *Brister v. Brister,* 92 N.M. 711, 715, 594 P.2d 1167, 1171 (1979); *Hazelwood,* 89 N.M. at 660–61, 556 P.2d at 346–47. The Supreme Court in *Brister* made clear that although a live-in relationship would not automatically terminate alimony, the economic factors of the relationship must be examined to determine whether they alter the need of the recipient spouse. *Brister,* 92 N.M. at 715, 594 P.2d at 1171. The Court stated: "Actual need being the criterion, what matters if the money comes from an inheritance, a crap game or the largess of a live-in lover. We hold that this additional resource of Mrs. Brister's may be weighed in

determining the amount of alimony that should be paid." *Id.* Under existing New Mexico law, the payor spouse gets the benefit of a fresh look in that the court's analysis of resources and need is based on the current economic realities of the recipient spouse. In this case, Wife acknowledged the financial contributions of the companion and presented a budget showing both his contributions and a continuing need for spousal support. The trial court took these new economic factors into consideration; *Brister* does not require more.

7. Nonetheless, Husband argues that under some circumstances, a live-in relationship becomes so much like a marriage that it should be considered one for purposes of terminating alimony. Husband cites *Kuert v. Kuert,* 60 N.M. 432, 292 P.2d 115 (1956), in which our Supreme Court held that remarriage creates a prima facie case that alimony should terminate, leaving room for the recipient to demonstrate "extraordinary conditions" for continued support. *Id.* at 439, 292 P.2d at 119. Husband urges us to apply this same analysis to cohabitation. In the alternative, Husband urges us to create a presumption to that effect and shift the burden of persuasion to Wife to show why alimony should not be terminated.

8. We decline to make either change to our law. The Supreme Court's rationale in *Kuert* is limited to an actual remarriage which created "a duty of support." *Id.* The Court in *Brister* could have applied that same rationale to a live-in relationship but did not do so. *Brister,* 92 N.M. at 715, 594 P.2d at 1171. We affirm the trial court on this issue.

PRECLUSIVE EFFECT OF PRIOR MODIFICATION ORDER

*First Motion To Terminate Alimony.*

9. In 1992, on the first motion to terminate alimony, the trial court found that Wife's reasonable expenses were $2000 per month, but that "[s]he is capable of earning $1,350/month 'net' [$1,450/month gross] income with her present employment and ability toward her $2,000/month needs." The net figure represented approximately $700 per month actual earnings and another $650 per month imputed earnings, which the trial court felt "[s]he is capable of earning." Based on this finding, the 1992 court reduced Husband's alimony to $650 per month, the difference between Wife's reasonable expenses and her earning potential ($2000 less $1350). The court found that Wife "CANNOT afford to be without at least $650 per month, and critically needs that amount to avoid disastrous financial and livelihood consequences."

*Second Motion To Terminate Alimony.*

10. During the trial on the second motion to terminate alimony, Husband contended that the financial contributions of Wife's live-in companion enabled her to reduce her monthly expenses to $1314, approximately the same amount as the total of her actual and imputed earnings. Based on that change, Husband argued that Wife no longer needed alimony because her expenses equaled her projected earnings.

11. Upon recommendation of the special master, the lower court declined to modify alimony. The court concluded that Wife "needs at least $650 per month in spousal support to meet her financial needs," and Husband "has the ability to continue paying alimony to [Wife] at the rate of $650 per month." In addition, the court concluded that Husband "has not demonstrated a material change of circumstances since the last order on spousal support, (August, 1992) sufficient to modify his present alimony obligation." The court found that Wife had made "reasonable efforts to reduce her indebtedness," and that Husband had not done the same. The court also found that Wife's earning capacity had diminished since 1992 "[b]y virtue of her age, education, and training." This followed the special master's conclusion that: "To the extent that [Husband's] income earning capacity has decreased because of his age, the same is true of [Wife]. It is therefore unreasonable to continue to impute a $1,350 net monthly income to her." The court adopted intact the special master's report.

12. On appeal, Husband disagrees that Wife's earning capacity is any less now than it was in 1992. Husband criticizes Wife for

not working hard enough to support herself and become independent of alimony, and he finds fault with the court for not making her do so. *See Lovato v. Lovato,* 98 N.M. 11, 13, 644 P.2d 525, 527 (1982) ("[T]rial court must not allow a spouse to abdicate the responsibility for his or her own support. . . ."). Husband argues that instead of working as a part-time substitute teacher, Wife should be required to work full-time, during the summer months as well as the school year, and to tutor children when not substitute teaching. At the very least, Husband would impute to Wife an annual income equal to the minimum wage for full-time employment.

13. Wife testified about her employment as a substitute teacher. She has worked whenever called by the school system and earned, on the average, $650 to $700 per month. Wife has been unable to increase her income by outside tutoring. Her one effort at advertising for tutoring students proved unsuccessful. Wife felt she was not competitive with most tutors because she lacked a teaching certificate. It is not clear how much additional education she would need to become certified. Even if she obtained her certificate, Wife testified that, at age 64, she was too old to expect full-time employment with the school system. In sum, Wife testified that she had done all that could reasonably be expected of her and that her actual earnings were far less than what the court had previously imputed. Husband presented no evidence that additional employment for Wife was actually available. *See Rabie v. Ogaki,* 116 N.M. 143, 148, 860 P.2d 785, 790 (Ct.App.1993) (in circumstances of case payor spouse has burden of showing that recipient spouse has in fact become self-sufficient). The evidence supports the court's finding that it was no longer reasonable for purposes of computing alimony to expect earnings from Wife beyond the present level of $700 per month. Having compared her actual income to her present monthly expenses (about $1350 per month), the court was well within its discretion in concluding that Wife "needs at least $650 per month in spousal support to meet her financial needs."

14. The trial judge's task was to balance the needs, resources, and capabilities of the parties. *Russell v. Russell,* 101 N.M. 648, 650, 687 P.2d 83, 85 (1984); *Rabie,* 116 N.M. at 146, 860 P.2d at 788. The trial judge concluded it was no longer reasonable to demand earnings significantly beyond Wife's present level, and that determination is supported by substantial evidence in the record. *See Sloan v. Sloan,* 77 N.M. 632, 633, 426 P.2d 780, 780 (1967). The trial court found Wife's earnings to be consistent with her capabilities. Husband's argument that Wife has a legal duty to maximize her income toward self-sufficiency misses the mark. As we understand it, the lower court does not disagree with that proposition. The court concluded that Wife was earning as much as she could reasonably be expected to earn under the circumstances. Husband's real dispute is with the court's factual and legal conclusions, which are supported in the record, and not with the legal standard applied to Wife's earnings.

*Issue Preclusion.*

15. In 1992, the court reduced alimony by two-thirds, from $2000 to $650 per month, based in part upon that court's estimate of Wife's earning capacity. It specifically found that Wife was capable of earning more than her actual income and imputed to her a net monthly income of $1350. Wife did not appeal the reduction in alimony. Husband seeks to use principles of issue preclusion (collateral estoppel) to estop Wife from denying in 1994 what the court found in 1992: that she was able to earn $1350 per month. Husband, the moving party, would shift to Wife, the non-moving party, the burden of establishing that circumstances had changed so that Wife could no longer earn that amount.

16. This presents a novel question in New Mexico. No New Mexico case directly discusses applying issue preclusion in this manner to shift the burden of persuasion to the non-moving party. In fact, we are unaware of any case, and Husband has not directed us to one, which applies issue preclusion to findings in a spousal support order against the non-moving party in the manner Husband proposes. We begin with general principles

of preclusion doctrine as they are applied to domestic relations judgments.

■ 17. As a general proposition, we agree that doctrines of claim and issue preclusion apply to some degree to domestic relations judgments. *See Smith v. Smith,* 98 N.M. 468, 470, 649 P.2d 1381, 1383 (1982) (child support issues adjudicated in earlier action were settled by doctrine of res judicata); *Sheets v. Sheets,* 106 N.M. 451, 454, 744 P.2d 924, 927 (Ct.App.1987) (previous order denying modification of alimony is usually res judicata for the grounds contained in that motion, absent a showing of a substantial change of circumstances); *see also Labow v. Labow,* 154 A.D.2d 90, 550 N.Y.S.2d 889, 892 (App.Div.) (collateral estoppel precluded payor spouse from relitigating requirement that he post security for future alimony payments), *appeal dismissed,* 75 N.Y.2d 947, 555 N.Y.S.2d 694, 554 N.E.2d 1282 (1990); *Deutsch v. Deutsch,* 57 A.D.2d 941, 395 N.Y.S.2d 82, 83 (App.Div.) (mem.) (collateral estoppel foreclosed payor spouse from relitigating whether payee spouse entitled to move to Florida), *appeal denied,* 42 N.Y.2d 807, 398 N.Y.S.2d 1028, 368 N.E.2d 45 (1977). *See generally* Restatement (Second) of Judgments § 73 (1982) (Changed Conditions); Doris M. Yendes, *Res Judicata in the Divorce Courts as Affects the Modification of Alimony Awards,* 38 Neb.L.Rev. 989, 1011 (1959) ("A court, having performed its function of ruling upon a controversy, cannot be taken over by a particular set of litigants for the continued readjudication and reconsideration of their affairs.").

18. Of course, for domestic relations judgments the major qualification to finality is that courts retain the power to modify support orders when justified by a substantial change in circumstances. NMSA 1978, § 40–4–7(B)(2) (Repl.Pamp.1994); *Sheets,* 106 N.M. at 454, 744 P.2d at 927. Unless the district court retains jurisdiction, other domestic relations judgments ordinarily are not modifiable except under the limited circumstances set forth in SCRA 1986, 1–060(B) (Repl.1992). *See Barnes v. Shoemaker,* 117 N.M. 59, 64–65, 868 P.2d 1284, 1289–90 (Ct. App.1993) (unlike support orders, decree dividing retirement benefits modifiable only

under SCRA 1–060(B)), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994). Therefore, we would characterize support orders as being entitled to a qualified preclusive effect, modifiable in light of changed circumstances. *See, e.g., Blaine v. Blaine,* 336 Md. 49, 646 A.2d 413, 424 (1994) (applying earlier findings to new facts in alimony modification proceeding provides "framework for the application of equitable principles"); *In re Marriage of Greisamer,* 276 Or. 397, 555 P.2d 28, 30 (en banc) (same rule applied to child custody), *on remand,* 27 Or.App. 521, 556 P.2d 992 (1976) (en banc); *Denley v. Denley,* 38 Conn.App. 349, 661 A.2d 628, 630 (1995) (support payments not modified when new income evidence considered along with pre-decree evidence shows no substantial change); *In re A.S.,* 12 Kan.App.2d 594, 752 P.2d 705, 711 (1988) (terminating parental rights); *In re Newman,* 49 Or.App. 221, 619 P.2d 901, 905 (1980) (same rule applied to termination of parental rights), *review denied* (Feb. 4, 1981); *Harder v. Harder,* 26 Or.App. 337, 552 P.2d 852, 855 (1976) (once change in circumstances established in child support proceedings court could consider matters behind initial order as well); *cf. Smith,* 98 N.M. at 470, 649 P.2d at 1383 (change in circumstances must have occurred since the adjudication that initially awarded child support).

■ 19. In New Mexico, parties may apply issue preclusion offensively, as Husband seeks to do here, when the court deems it fundamentally fair to the parties. *Silva v. State,* 106 N.M. 472, 476, 745 P.2d 380, 384 (1987). The party invoking issue preclusion has the burden of introducing sufficient evidence to enable the court to determine whether the doctrine is applicable. *DeLisle v. Avallone,* 117 N.M. 602, 606, 874 P.2d 1266, 1270 (Ct.App.), *cert. denied,* 117 N.M. 773, 877 P.2d 579 (1994). Once the party has made a prima facie showing, a party opposing application of the doctrine may raise the issue of " 'countervailing equities.' " *Id.* (quoting *Silva,* 106 N.M. at 476, 745 P.2d at 384).

20. Preclusion doctrine arises from a need to prevent relitigation of issues previously decided. *DeLisle,* 117 N.M. at 605, 874

P.2d at 1269; *Silva,* 106 N.M. at 474, 745 P.2d at 382; *see also AFL–CIO v. Udall,* 111 N.M. 432, 437–38, 806 P.2d 572, 577–78 (1991) (promoting finality takes precedence over former technical rules of preclusion). Promoting finality in civil disputes is part of the foundation of an ordered society. It is unfair to the prevailing party and an unwise use of court resources to permit relitigation of an issue that has been resolved in a previous action. Restatement, *supra,* § 28 cmt. b, at 275. The public policy of this state discourages repeated attempts to reopen support decrees. This policy places a burden upon the movant to show not just a substantial factual change, but also that, all things considered, the change justifies a new support order. *See* § 40–4–7(B)(2); *Smith,* 98 N.M. at 470, 649 P.2d at 1383; *Sheets,* 106 N.M. at 456, 744 P.2d at 929. Placing the burden of persuasion on the moving party implements public policy by making it more difficult to reopen the prior support order and easier to defend it. *See* 2 Clark, *supra,* § 18.2, at 370–71.

■ 21. In this case, shifting the burden from Husband to Wife on the issue of earning capacity would run contrary to public policy. We would only make it more difficult for Wife to defend the prior support order and easier for Husband to attack it. Yet, as we have said, the purpose of preclusion doctrine, both claim and issue, is to make it more difficult to reopen support decrees. Husband's proposed use of issue preclusion would only encourage repeated efforts to reopen. We ought not apply preclusion doctrine in a manner which destabilizes the previous order. The irony of Husband's position does not escape us. In the name of controlling litigation, Husband asks us to apply issue preclusion in a manner which would only provoke it.

22. Because the doctrinal goal of discouraging litigation is so intertwined with the burden of production and persuasion, we believe that burden should remain with Husband. *See Silva,* 106 N.M. at 474, 745 P.2d at 382 (collateral estoppel may not be applied if it would not further doctrinal goal of preventing relitigation of issues); *DeLisle,* 117 N.M. at 605, 874 P.2d at 1269 (court should apply collateral estoppel in a manner which furthers the aim of preventing relitigation of issues); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct.App.) (even when elements of collateral estoppel are present, the trial court must consider the countervailing equities), *cert. denied,* 115 N.M. 60, 846 P.2d 1069 (1993). If Husband wants to reopen, then as part of his overall case, he must carry the burden of presenting evidence as well as persuading the finder of fact that the earning capacity imputed to Wife two years earlier should remain intact. If Wife were to reopen, on the other hand, and request increased support because of declining earning capacity, then Wife would shoulder the burden of persuasion and going forward with evidence of changed circumstances.

23. One case illustrates the extent to which our courts reject issue preclusion when, although technically correct, it would run counter to policy goals. In *Shovelin v. Central New Mexico Electric Cooperative, Inc.,* 115 N.M. 293, 301–02, 850 P.2d 996, 1004–05 (1993), our Supreme Court declined to apply defensive preclusion doctrine to an administrative proceeding because it would only encourage intensified, proactive litigation at the administrative level instead of the informal, problem-solving process it was designed to be. We perceive a similar policy at work here. Wife declined to appeal a reduction in support to $650 despite being dissatisfied with certain findings in the prior order. She was willing to live with the alimony reduction. We would serve no useful purpose by encouraging appeals just to protect against the possibility of the offensive use of findings of fact in future proceedings. *Cf.* Restatement, *supra,* § 28(1), at 273 (exception to issue preclusion where one could not appeal judgment in initial action).

24. Accordingly, we conclude that principles of issue preclusion do not apply to the earlier findings regarding earning capacity. We affirm the trial court's determination that Wife continues to need spousal support in the indicated amount. *See Gomez v. Bernalillo County Clerk's Office,* 118 N.M. 449, 452, 882 P.2d 40, 43 (Ct.App.1994) ("When a finding is

made against the party bearing the burden of persuasion, the reviewing court will affirm if the fact finder acted rationally.").

## ADDITIONAL ISSUES

25. Husband raises additional issues which do not require discussion. These include: (1) the court's findings against Husband regarding his financial ability to continue with support obligations, (2) the court's refusal to find against Wife regarding certain support liens on Husband's property, and (3) the court's award of attorney fees to Wife. We affirm the action taken by the trial court as being within the court's discretion and supported by substantial evidence in the record.

## ATTORNEY FEES ON APPEAL

26. We award Wife $5000 in attorney fees for this appeal.

## CONCLUSION

27. For the above reasons, the decision of the trial court is affirmed.

28. IT IS SO ORDERED.

HARTZ and WECHSLER, JJ., concur.

HARTZ, Judge, concurring.

29. I join in Judge Bosson's opinion. In my view, our rejection of issue preclusion in this case is consistent with general preclusion doctrine. A finding in one proceeding cannot be the predicate for issue preclusion in a later proceeding unless the finding is essential to the judgment in the first proceeding. Restatement (Second) of Judgments § 27 (1982). One could say that the finding regarding Wife's earning capacity was not essential to the original judgment awarding spousal support. After all, the same support could have been awarded even if the district court had determined that Wife had a significantly higher earning capacity. The award of spousal support is based on weighing a number of factors, some arguing for more support and some arguing for less. No one factor is dispositive. As a consequence, the court may not concentrate as carefully on its findings regarding each individual factor in the balance, so long as it is confident about the final award. Similar considerations have led to adoption of the rule that issue preclusion cannot be predicated on a finding that is one of two or more alternative findings, any of which would support the judgment. *See id.* cmt. i. These considerations, together with recognition of "the important goal of minimizing future contact and conflict between divorcing spouses," *Ruggles v. Ruggles,* 116 N.M. 52, 62, 860 P.2d 182, 192 (1993), convince me that we should not recognize the offensive use of issue preclusion in support of a motion to modify a support award.