## KATHERINE S. DAIGER *v.* JOHN M. DAIGER.

[Nos. 92-94, October Term, 1927.]

*Decided February 9th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Philander B. Briscoe* and *Willis R. Jones,* for the appellant.

*Isaac Lobe Straus,* with whom were *Carlyle Barton,* and *Niles, Barton, Morrow & Yost,* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

There are three appeals in this record; first, from the decree of the Circuit Court of Baltimore City, under date of June 22nd, 1927, dismissing the bill of complaint; second,

from the decree of July 20th, 1927, ordering the appellant to pay two-thirds of the costs of this appeal, and requiring her to deposit with counsel for the appellee a note, due from the appellee to her, in the sum of $1,362.50, as security for her proportion of the costs; and third, from the action of the court taken on September 15th, 1927, refusing to continue the alimony from the time of the decree of the lower court dismissing the bill to the final determination upon appeal from that decree to this court.

The bill of complaint in this case was filed by the appellant, the wife, against her husband, the appellee, for divorce *a mensa et thoro* on the ground of abandonment and desertion, the date of such abandonment being alleged as beginning on the 28th of April, 1926. The relief prayed for is that she be divorced *a mensa et thoro,* that she be awarded alimony *pendente lite* and counsel fees, that she be awarded the guardianship and custody of the two infant children, and for permanent alimony. The questions thus presented are simple and are three in number: First: Did the living apart of the parties, which the record discloses began on April 28th, 1926, take place or continue under such circumstances as constitutes abandonment and desertion by the husband, for which the wife is entitled to a decree of divorce *a mensa et thoro?* Second: Should a wife, in the financial circumstances such as disclosed by this record, be compelled to pay any portion of the costs of her appeal to this court from a decree of the chancellor denying her a divorce? Third: Is a wife, under the circumstances here shown, entitled to alimony pending a decision of the case on appeal to this court?

In order to determine the first of these questions it is necessary to examine the evidence adduced in behalf of the respective contentions as gathered from the record, and apply such facts to the definition of abandonment and desertion as repeatedly laid down by this court, as well as by text writers and courts of other jurisdictions. In the case of *Klein v. Klein,* 146 Md. 27, after quoting Code, art. 16, sec. 38, we said: "Abandonment or desertion, as a marital offense, consists in the voluntary separation of one of the married parties

from the other, or the refusal to renew suspended cohabitation, without justification either in the consent or the wrongful conduct of the other party. *Bishop on Marriage, Divorce & Separation,* vol. 1, secs. 1662-3; *Gill v. Gill.* 93 Md. 654; *Taylor v. Taylor,* 112 Md. 666; *Buckner v. Buckner,* 118 Md. 101." In that case the court set forth the necessary elements to constitute desertion, and there are collected numerous authorities in support of its declaration. It was there said: "A divorce for abandonment and desertion may be granted without regard to duration. *Brown v. Brown,* 2 Md. Ch. 316; *Harding v. Harding,* 22 Md. 337; *Young v. Young,* 136 Md. 84." The law on this subject being so well settled, there can be very little difference on that score, even among counsel; and the first question mentioned above resolves itself into whether or not the evidence on behalf of the appellant meets the test prescribed by law. In a case decided in 1850, in which, singularly, the parties were also *Daiger v. Daiger* (2 Md. Ch. 335), Chancellor Johnson used language which is particularly applicable to the record now before us. He stated: "A vast mass of evidence has been taken and a great deal of time consumed in the discussion of this evidence. I do not deem it necessary, and I certainly feel no inclination, to follow counsel in their investigation of facts not essential to the point to be decided; and my disinclination to do so is not diminished in this case by the nature of these facts." We have here a record of 858 pages, 800 of which are taken up with testimony describing in detail the alleged marital infelicities of the parties from the date of their marriage in 1916 to the date of the hearing in the summer of 1927. Much of this testimony is of an inconsequential and irrelevant nature, interspersed with discussions and colloquies between counsel and between court and counsel, in the course of which there are probably a thousand rulings of the court on evidence, and hundreds of exceptions taken to such rulings. Counsel for the appellant in their brief say: "To attempt to discuss the exceptions would create a brief almost as extensive as the record itself. We, however, waive none of these exceptions, and submit that the record is replete with reversible

errors upon the evidence." Were this court to pass in detail upon each one of these rulings, and state ever so briefly its reason for the conclusion reached thereon, the result would probably require one full volume of our reports for its record. It is not our purpose or intention to circumscribe or limit legitimate, material, and pertinent testimony contained in records coming to this court, but only to suggest to trial courts, and admonish counsel, that they should endeavor to limit the evidence in such cases to that which is material, relevant, and directed to the point at issue.

As stated, the evidence in this case begins with testimony as to the conduct and language of the parties as far back as 1916, the appellant contending that the actions of the appellee, so remote as that, constitute justification for her leaving, and the appellee contending, on the other hand, that similar words and acts on the part of the appellant justified him in leaving her, admitting for the sake of the argument that he did leave her. A complete answer to both of these contentions is that the parties on several occasions separated and lived apart from each other, and after such separation, voluntarily and of their own accord reunited and lived together, the last of such reunions having been in March, 1925.

We have consumed much time in a thorough examination of this record, and have reached the conclusion that a very large part thereof has no legal pertinency upon the question of whether or not Mr. Daiger abandoned and deserted his wife on April 28th, 1926, and if so, whether her conduct justified such abandonment. The chancellor reached the conclusion that there had been no abandonment and desertion by the husband such as the law recognizes as a ground for divorce; and with this conclusion we agree. Regardless of what had taken place prior to the date of the last reunion, which might or might not constitute abandonment by one or the other, all such causes were condoned, obliterated and canceled, as a basis for future divorce action, when they voluntarily resumed full and complete marital relations, as evidenced by the subsequent birth of a child in January, 1926 The parties separated and reunited several times since the

date of their marriage, and even though it may be argued that the reunions were in the nature of an armed truce, nevertheless, the legal effect of the husband's returning to the home and bed of his wife was a condonation by each of the previous delinquencies of the other.

In April, 1926, they were living together in property in Guilford belonging to the J. M. Daiger Corporation, of which the husband was the president and owner of a majority of the stock, there being no rent paid for such occupancy. The title to this property had formerly been in the name of husband and wife as tenants by the entireties, and was subject to a mortgage. It is apparent that this property, by agreement, was sold to the corporation, subject to the mortgage, for the sum of $2,725, the wife's one-half of that amount being represented by a note of her husband for $1,362.50, payable to her order. A deed was given, signed by both husband and wife. By the terms of this agreement the vendors were to remain in the property until March 1st, 1926. They in fact remained in the house until about April 28th, 1926, at which time the wife and children moved to a house on Carlyle Avenue, which had been selected by the wife with the knowledge of the husband, as evidenced by the fact that he signed the lease and paid the first month's rent in advance. It is further clear that it was the intention of the parties at that time to separate, the wife and children going to the new home on Carlyle Avenue and the husband remaining in the Guilford house. The oral testimony on this point is conflicting, but the fact that they intended to separate at this time is convincingly established by the fact that the husband's bedroom at Guilford was left furnished, and his personal effects were left there, while all of the other furniture and belongings of the wife were moved to Carlyle Avenue, and further, from the correspondence between the husband and wife at that time. The husband testified that this arrangement was by prior agreement, and the correspondence of the wife at that time shows that she knew he was not going with her and the children to the Carlyle Avenue house, and acquiesced in such an arrangement. While this arrangement resulted in a ceasing to live

together by the parties, it does not constitute the "voluntary separation of one of the married parties from the other without justification in the consent of the other party." *Klein v. Klein, supra.*

After the filing of the bill of complaint, upon petition by the complainant, the court passed an order allowing alimony *pendente lite* of $225 per month, $115 of which was to be paid by the husband as rent for the Carlyle Avenue house. By the decree dismissing the bill of complaint, the appellee was required to pay the costs of the proceeding and a fee of $1,000 to the complainant's solicitor. Subsequent to the appeal from that decree, the appellant filed a petition wherein, after reciting the aforesaid decree and the appeal therefrom, she alleged that she had no funds or property with which to pay the expenses of the aforesaid appeal to the Court of Appeals, or a fee for her counsel, and prayed that an order be passed requiring the defendant to pay the cost of the preparation, printing, and other expenses of the record and brief, and counsel fee for the service of complainant's attorney in conducting the case before the Court of Appeals. Upon this petition the court passed the decree forming the subject of the second appeal, wherein it was ordered that the wife pay two-thirds of the costs of said appeal, and the husband one-third thereof, plus $100 as an additional fee to her solicitor for his services rendered and to be rendered in said appeal, and further ordering that she deposit with the husband's attorney the note for $1,362.50 due from her husband to herself, as security for the payment of that part of the costs of the appeal ordered to be paid by her. Under the decisions of this court, such an order was clearly erroneous and must be reversed. The general rule laid down in the case of *Hood v. Hood,* 138 Md. 355, as stated by Judge Boyd, is "that the wife is a privileged suitor in divorce cases, and if she is without an income competent for her support, and the maintenance of the suit, living separated from her husband, the court will allow her alimony *pendente lite* and money to carry on her suit without inquiring into the merits."

And it was said in *Sterling v. Sterling,* 145 Md. 643 : "Under the rule and the reason therefor the court may allow the payment of alimony, pending an appeal, and costs and reasonable counsel fees incurred or paid by the wife in the prosecution or defense of an appeal to this court." In the case of *Chappell v. Chappell,* 86 Md. 532, Judge McSherry, speaking for the court, said : "There can be no doubt whatever that a court of equity has power to allow alimony to a wife pending a suit for divorce; nor can its authority to require the husband to pay her counsel fees and the costs of the proceeding be disputed. These are not now open questions in Maryland. The amount allowed is regulated by the circumstances of each case and is usually said to rest in the chancellor's sound discretion. But it by no means follows that this discretion is never open to review. So far from this being so, it has been held on appeal from the final decree that the amount allowed for alimony may be curtailed (*Ricketts v. Ricketts,* 4 Gill, 106), and where an allowance was refused upon an application made to the lower court after final decree and after the record had been transmitted to this court on an appeal from the final decree, it was held that an appeal would lie from such refusal. *Rohrback v. Rohrback,* 75 Md. 317." To like effect see *Coles v. Coles,* 2 Md. Ch. 342; *Rohrback v. Rohrback, supra; Buckner v. Buckner, supra; Dicus v. Dicus,* 131 Md. 87.

The order from which the third appeal was taken refused the wife alimony pending the appeal; that is, refused to allow any alimony after the passage of the decree dismissing the bill of complaint. Upon the authorities quoted, it is apparent that this action of the chancellor was also erroneous and must be reversed. In this state it is no longer open to question, first, that a wife in a divorce proceeding is a privileged suitor where she is living apart from her husband and has no independent means of her own, and as such she is entitled to alimony, suit money, and reasonable counsel fees; second, that she is entitled to the continuance of such alimony during the pendency of an appeal to this court and until its final disposition, as also the costs incident to the record on appeal,

and reasonable counsel fees in the prosecution thereof. The wife in this case has no independent means such as would require her to pay the costs of the proceeding, either in the lower court or in this court. There is a controversy as to the husband's income, but it is conceded that it is at least $6,000, the amount of his salary as president of the J. M. Daiger Corporation, and in our opinion it is in excess of that sum. The lower court awarded alimony of $225 per month, and we do not feel disposed to interfere with its order in that respect. There was also an order allowing, at the conclusion of the case below, a fee of $1,000 to be paid by the husband to the solicitor of the appellant, which we think was proper and reasonable, under the conditions obtaining in this case. The husband was further ordered to pay an additional fee of $100 for services rendered on the appeal. We are of the opinion that this fee was inadequate and disproportionate to the services rendered, and that the sum of $250 for such services so rendered is a reasonable and proper fee to be allowed in this case. It follows from what we have said that the decree in No. 92 will be affirmed, that the decree in No. 93 must be reversed, and that the order in No. 94 must also be reversed.

*Decree in No. 92 affirmed; decree in No. 93 reversed; order appealed from in No. 94 reversed; and cases remanded that decrees or orders may be passed in conformity with the views herein expressed; the appellee to pay the costs in all cases, both in this court and the lower court.*