BROWN *v.* BROWN

[No. 91, October Term, 1953.]

198

*Decided March 22, 1954.*

*Motion for rehearing filed April 12, 1954, denied April 20, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Donald C. Sponseller* and *Stanford Hoff* for the appellant.

*Robert E. Clapp, Jr.,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is the second appeal brought here by Edith Baker Brown from the Circuit Court for Carroll County in her suit for separate maintenance against her husband, Raymond Guynne Brown, Jr.

The parties were married in Washington in May, 1933. They lived together in Carroll County for 17 years and have two daughters. Defendant owns and operates a lunch and soda fountain business in Ridgeville and also has an extensive business in the operation of pinball machines and music boxes. In the bill of complaint filed on September 14, 1950, complainant alleged that on August 28, 1950, she left her husband on account of his extreme cruelty and went with her two daughters to the home of her parents. She prayed the Court to award alimony, custody of the children and an allowance for their support, counsel fee for her attorneys, and an injunction and other security.

Complainant alleged that her husband's income was between $2,000 and $3,000 a month. The Court thereupon passed an order *nisi* requiring defendant to pay complainant $75 a week as alimony *pendente lite* and for the support of the children, and to pay complainant's attorneys a counsel fee of $100. On November 14, 1950, after defendant claimed that his income was about $2,000 a year, the Court reduced the award to $37.50 a week, accounting from September 14, 1950.

On January 12, 1951, defendant filed a petition alleging that in December, 1950, his wife had entered his store and apartment and had taken some money, bonds, and bank books, and praying the Court to order her to return them. Complainant answered that she took some clothing that belonged to her and the children, and also "certain sums of money and property which belonged to her or in which she had some right of ownership."

In April, 1951, complainant filed an amended bill of complaint alleging that her husband had committed adultery on numerous occasions. She further alleged therein that she and her husband owned as tenants by the entireties a number of parcels of real estate in Carroll and Frederick Counties, and that her husband, who had been collecting the rents therefrom, had not been managing them in such a way as to produce fair and proper income, and also had failed to render an

accounting to her. She prayed the Court to appoint a receiver to manage the properties and to collect the rents, and also to order her husband to render an accounting of the rents which he had collected.

Defendant, in his answer to the amended bill, denied that he was guilty of cruelty and adultery. He then answered that he bought the properties entirely with his own money, and that they were conveyed to him and his wife merely for convenience. He further answered that he was managing the properties in the same way in which he had always managed them, and that no loss had been occasioned by his management. He further answered that the Court considered the income from the properties in fixing the amount of alimony *pendente lite,* and, since he had complied with the orders of the Court, there was no reason for an accounting.

Complainant urged the Court to set the case for trial; but on September 24, 1951, more than a year after the institution of suit, the Court passed an order suspending further proceedings until complainant returned the property she had taken in December, 1950. Complainant's first appeal was from that order. On April 2, 1952, the Court of Appeals, in an opinion by Judge Collins, reversed the order on the ground that a court of equity in an action for divorce or separate maintenance has no power, unless conferred by statute, to adjust the property rights of the parties. *Brown v. Brown,* 199 Md. 585, 87 A. 2d 626, 629.

Following the decision on that appeal, complainant again urged the Court to set the case for trial. But the Court again gave consideration to defendant's petition, and it was not until November, 1952, that the Court proceeded to the trial of the case.

Complainant, who was then living in a three-room apartment in Mount Airy, was 36 years old. The elder daughter, age 18, had become a student nurse in the Union Memorial Hospital in Baltimore. The other daughter, age 13, was attending the public school in Mount Airy. Complainant testified that her husband struck

her violently on a number of occasions. She testified that when she suggested in February, 1950, after her return from a hospital in Washington, that they ought to plan for a home, he became so enraged that he struck her on the chest, knocked her into the dining room, and bruised her spine. The climax came on the evening of August 28, 1950, when she returned home from the Carnival with her younger daughter. Her husband was waiting for her in the doorway, and he told her that she could not come in. She testified that he struck her and knocked her into the road. It was then that she took refuge with her daughters in the home of her parents.

Finally, on May 29, 1953, more than two years and eight months after the institution of suit, the Court reached the decision that complainant had established her right to separate maintenance. The Court thereupon entered a decree granting the custody of the children to complainant, and ordering defendant to pay her $50 a week as alimony and for the support of the children.

Complainant raised five objections to the decree: (1) that the allowance of $50 a week for herself and the children is insufficient; (2) that it cut the allowance to $37.50 a week for 36 weeks in order to reimburse defendant for the sum of $450 which she received from the sale of a bond; (3) that it failed to order a receivership; (4) that it failed to order an accounting; and (5) that it failed to order defendant to pay a counsel fee to her attorneys.

At the outset defendant made the technical objection that complainant did not print all of the testimony in the appendix to her brief, as required by the Rules of the Court of Appeals, but printed only certain parts of it and made calculations therefrom favorable to herself.

Rule 36 provides: "Unless ordered by this Court, it shall not be necessary to print the record on appeal, except that the appellant shall print as a part of the appendix to his brief the judgment, decree or order

appealed from, together with any opinion or charge of the Court."

Rule 39 directs that the appendix to the appellant's brief shall also contain "such parts of the record as he desires the Court to read."

We have repeatedly emphasized the importance of printing all of the testimony material to the issue. Where the Court of Appeals must consider all material evidence in order to decide the questions raised by the appellant, the appellant may not print in the appendix to his brief only those portions of the testimony which he considers favorable to himself, but he must print all testimony that the Court has to have before it to decide such questions. *Seybolt v. Baber*, 203 Md. 20, 25-26, 97 A. 2d 907, 909; *Gmurek v. Kajder*, 203 Md. 437, 101 A. 2d 204.

On this appeal the appendix to appellant's brief contains 70 pages of testimony, and also the opinion of the Court, which covers 25 pages and completely recapitulates and discusses all of the testimony produced in the case. Defendant did not indicate where any contradictory testimony had been omitted. Apparently the appendix supplies the salient testimony for an understanding of the case.

Defendant also made the objection that complainant did not furnish him with a statement of the parts of the record she proposed to print within the time prescribed by the Rules of the Court of Appeals. Rule 39 provides: "The appellant, within ten days after the filing of the transcript of the record in this Court, shall furnish the appellee or his counsel with a statement of the parts of the record he proposes to print with his brief."

Complainant should have complied with our rule by furnishing defendant with a statement of the parts of the record she proposed to print within ten days after the filing of the transcript in the Court of Appeals. However, as it has not been shown that defendant was prejudiced by her delay, we will not dismiss her appeal.

*Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346; *Klein v. Dougherty,* 200 Md. 22, 25, 87 A. 2d 821.

*First.* We consider complainant's contention that the Court should have awarded her a larger allowance for herself and her children. In determining an award of alimony or support, the court has no precise rule or standard formula. *Faulkner v. Faulkner,* 198 Md. 495, 84 A. 2d 884. The ability of the husband to provide support and the wife's need for it are controlling factors. The amount to be allowed in a suit for divorce or separate maintenance is governed by all the circumstances of each case, and is in the sound discretion of the court. The Court of Appeals has the right to review the amount of alimony allowed. *Daiger v. Daiger,* 154 Md. 501, 508, 140 A. 717. However, the award should not be disturbed unless the chancellor's discretion was arbitrarily used and his judgment was clearly wrong. *Westphal v. Westphal,* 132 Md. 330, 334, 103 A. 846; *Wygodsky v. Wygodsky,* 134 Md. 344, 106 A. 698; *Fairbank v. Fairbank,* 169 Md. 212, 217, 181 A. 233; *Mariani v. Mariani,* 189 Md. 283, 289, 55 A. 2d 713.

In the case before us the records are so incomplete and the accounts so complicated that it is difficult to determine with certainty either the exact extent of defendant's wealth or his exact income. We are convinced, however, that his wealth and income warrant a larger award to complainant.

The Court placed a valuation of $15,050 on defendant's store business and real estate, and $70,000 on his pinball and music box business. The Court then listed the following assets: loans, $7,000; mortgage, $2,700; automobile and motor trucks, $3,469.25; money in bank, $3,791.21. These assets aggregated $102,010.46.

The Court then subtracted the following amounts: notes and accounts payable, $37,111.84; bad debts, $2,500; income taxes due for 1944, 1945 and 1946, $46,600. As these amounts totaled $86,211.84, the Court concluded that defendant was worth only $15,798.62.

It appeared that defendant had retained an attorney specializing in income taxation to contest the Government's claim for $46,600 for income taxes, but the Court accepted the full amount of the claim as one of defendant's liabilities, thus materially reducing defendant's net worth and income. On the other hand, when defendant testified that, in order to secure locations for his amusement devices, it was his custom to loan sums of money to the proprietors of the establishments, and that he had made loans aggregating $28,400, the Court did not believe that defendant loaned such amounts for the privilege of installing the devices.

As defendant's records for 1952 were not complete, the Court undertook to determine his income in 1951. It was shown that he had deposited in bank in that year a total of $110,987.10. However, defendant's brother, Walter C. Brown, testified that of that amount only $84,419.14 was from collections.

Defendant claimed that, in determining the net income from his business, the following amounts were deductible from his gross income: salaries, $5,136.05; repairs, $6,049.58; gasoline and oil, $2,482.70; interest, $214.78; finance charges, $753; bad debts, $2,847.75; repairs to motor vehicles, $1,325; telephone, $193.55; freight, $282.94; heating, $439.78; license fees, $1,308; taxes, $612.77; total, $21,645.90.

Complainant challenged the deduction of $5,136.05 for salaries, and the deduction of $6,049.58 for repairs. She called attention to the testimony of defendant's collectors that they deducted the necessary amounts for salaries and repairs before they turned the collections over to defendant. Complainant also challenged the deduction of $2,482.70 for gasoline and oil, asserting that the testimony was uncontradicted that the collectors paid for gasoline and oil in cash. Giving defendant the benefit of the doubt by allowing all of the deductions claimed by him totaling $21,645.90, there still remained a balance of $62,733.24.

Largely because of the rapid depreciation of pinball machines and music boxes, the Court reached the conclusion that defendant's net income in 1951 was only $3,814.38. The Court evidently relied on the fact that defendant's brother testified that, in preparing the Federal income tax returns, he used the standard depreciation allowed by the Bureau of Internal Revenue, namely, two years for pinball machines, and three years for music boxes. But he admitted that he used that depreciation merely because the Government allowed it for calculation of income tax, and he definitely stated that such was not the actual depreciation. Moreover, Irving B. Watkins, of Westminster, who has been in the pinball machine business for nearly a quarter of a century, testified as an expert that the average life of pinball machines is about five years, and the average life of music boxes is about ten years.

R. Bond Baker, one of defendant's collectors, testified that about 25 per cent of defendant's investment in amusement devices was in pinball machines, and about 75 per cent in music boxes. As there was testimony that all of defendant's amusement devices were worth $85,000, it was estimated that the value of the pinball machines was $21,250, and the value of his music boxes $63,750. Accordingly, if the pinball machines lasted only three years, or depreciated $7,100 a year, and the music boxes lasted only five years, or depreciated $12,750 a year, the total depreciation was not more than $20,000 a year. It was further conceded that the depreciation of defendant's motor vehicles was approximately $1,000 a year. Therefore, if the depreciation of the pinball machines and music boxes was $20,000, and the depreciation of the motor vehicles $1,000, defendant's net income from his business in 1951 was $41,773.24.

The view that defendant's income was far greater than that found by the Court is supported by the fact that, while his amusement devices in 1948 were valued at $33,000, they were valued in 1952 at over $85,000, and by the fact that, while he held no notes from

debtors in May, 1951, in November, 1952, he held notes for over $28,000. He also held two mortgages for $4,700, and owned a $3,000 automobile and several motor trucks.

We are of the opinion that defendant should be ordered to pay at the rate of $100 a week for the maintenance of his wife and children, accounting from May 29, 1953. The Court should also order defendant to pay to complainant one-half of the net income from the properties held by them as tenants by the entireties, accounting from May 29, 1953.

Of course, if it is found from more complete records that defendant's income does not justify that allowance, the amount should be reduced. The amount of alimony to be awarded a wife is subject to variation from time to time as the circumstances, needs, and pecuniary conditions of the parties change. *Winkel v. Winkel,* 178 Md. 489, 499, 15 A. 2d 914, 918; *Safe Deposit & Trust Co. of Baltimore v. Robertson,* 192 Md. 653, 663, 65 A. 2d 292, 296; Sugarman v. Sugarman, 197 Md. 182, 188, 78 A. 2d 456, 459.

But with the information we now have, unsatisfactory though it is, we feel that payments in a larger amount can at least be made temporarily while complainant is in need. She swore that the necessaries of life, such as an apartment, food, clothing, transportation, and medical attention for herself and children had been costing over $100 a week. The Court ordered her husband to pay her only $50 a week, which was cut to $37.50 a week for 36 weeks. She explained that, even after she had spent the sum of $640, which she had in cash, and also some money she had withdrawn from the bank accounts before they were attached by her husband, she had to borrow $700 from her mother and $1,100 from her brother, and still owed over $1,000 for furniture.

It is entirely true that the court should not make an award of alimony so excessive as to oppress or dishearten the husband, but it is also true that the wife should not be made to suffer in loss of maintenance

on account of her husband's extravagance. *Timanus v. Timanus,* 178 Md. 640, 643, 16 A. 2d 918. The record in this case indicates that defendant did not deny himself any of the luxuries of life, while his wife was unable to pay for necessaries. In 1952, when defendant's Oldsmobile convertible, valued at $3,500 was wrecked, he purchased another convertible for more than $3,000. It also appeared that he traveled to conventions, to the seashore in summer, and to Florida in winter.

Defendant owns a building in Ridgeville worth $13,000, and two houses in Mount Airy worth nearly $10,000. In addition, he and complainant own a store and apartment building on East Patrick Street in Frederick worth $13,000, and an apartment house in Ridgeville worth $13,000. They also own building lots on Main Street in Mount Airy worth about $3,000.

*Second.* Complainant objected to the proviso in the decree cutting the weekly allowance of $50 to $37.50 during a period of 36 weeks in order to make restitution of $450 which she received from the sale of a bond.

We reaffirm the rule that a court of equity in a divorce or separate maintenance suit has no power, unless expressly conferred by statute, to transfer the property of either spouse to the other or otherwise to dispose of it. *Hall v. Hall,* 180 Md. 353, 24 A. 2d 415; *Brown v. Brown,* 199 Md. 585, 87 A. 2d 626, 628. The Legislature has conferred such power in cases of divorce, but not in cases of separate maintenance. Code 1951, art. 16, sec. 38. This is a suit for separate maintenance. The Court should therefore make its award of alimony on the basis of the wife's need and the husband's ability to pay without attempting to adjust the property rights of the parties.

*Third.* Complainant contends that the Court should have appointed a receiver to manage the properties held by the parties as tenants by the entireties. The object of a receivership is to preserve an estate intact, to keep it within the jurisdiction of the court, to prevent waste, spoliation, or deterioration pending its appropriation

as may be directed by final decree. The power of a court of equity to appoint a receiver is a discretionary one exercised in aid of its jurisdiction to enable it to accomplish as far as possible complete justice between the parties before it. It should be exercised with great caution, and if it does not clearly appear that there is fraud, spoliation, or imminent danger of the loss of the property unless immediate possession is taken by the court, a receivership should not be ordered. *Hagerstown Furniture Co. v. Baker*, 155 Md. 549, 558, 142 A. 885; *Williams v. Salisbury Ice Co.*, 176 Md. 13, 27, 3 A. 2d 507.

It is the law in this State that the wife shares equally with the husband in the income from property held by them as tenants by the entireties. *Whitelock v. Whitelock*, 156 Md. 115, 122, 123, 143 A. 712; *Collier v. Collier*, 182 Md. 82, 90, 32 A. 2d 469; *Elko v. Elko*, 187 Md. 161, 168, 49 A. 2d 441, 168 A. L. R. 256. It is thus beyond question that a court of equity may appoint a receiver when necessary to manage real property owned by a husband and wife as tenants by the entireties. *Keen v. Keen,* 191 Md. 31, 38, 60 A. 2d 200, 204.

In *Masterman v. Masterman,* 129 Md. 167, 178, 98 A. 537, where a couple owned a home as tenants by the entireties, but the husband abandoned it, and it was later damaged by fire, the Court of Appeals ruled that the Circuit Court of Baltimore City had the right to appoint a receiver to take charge of the property and to make the necessary repairs. Chief Judge Boyd said in the opinion of the Court in that case: "When one of them refuses to allow the money received from the insurance company to be used in repairing and restoring the property insured, the other might suffer great loss if a Court of Equity could furnish no relief. * * * The allegations of the bill, if sustained, are sufficient to justify the Court in appointing a receiver in order to protect the property from further loss, and deterioration from want of repairs, and if the Court is of the opinion that it is necessary for the preservation of the property from further loss after the delay occasioned by this appeal,

to appoint a receiver at once it should do so for that purpose."

In the present case, however, the chancellor, who saw and heard the witnesses, considered it unnecessary to appoint a receiver. Complainant focused attention on the testimony that the property in Frederick, which defendant had been renting to a cousin for $75 a month, could be rented for $100 to $125 a month; and that the property in Ridgeville, which he had been renting for $95 a month, could be rented for $152.50 a month. But there was a difference of opinion among the witnesses as to what the properties could be rented for. One real estate expert testified that he was unable to say that $75 is an unreasonable rent for the property in Frederick. Furthermore, as defendant stated, complainant was satisfied with the rents from the properties before she left him, and there was no evidence of favoritism.

It is an established rule that the Court of Appeals will not reverse a decision of a court of equity upon a finding of facts unless it is clearly apparent that the finding is not supported by the weight of the evidence. *Berman v. Leckner,* 193 Md. 177, 186, 66 A. 2d 392; *Kolker v. Biggs,* 203 Md. 137, 99 A. 2d 743. As the testimony in this case is conflicting, and the Court evidently concluded that it was not for the best interests of the parties to subject them to the heavy expense of a receivership, we will not order the Court to appoint a receiver in these proceedings.

*Fourth.* We find no merit in complainant's contention that defendant should render an accounting in these proceedings for rents collected from the properties owned by her and her husband as tenants by the entireties. It is true that the husband should share equally with the wife all the net income obtained from property held by them as tenants by the entireties. But in this case defendant disclosed to the Court the income derived from all of the properties he owned individually and all those he and his wife owned as tenants by the entireties. Moreover, defendant asserted that he had made no charge for

managing the properties or for collecting the rents. Under these circumstances we do not believe it would serve a useful purpose to order an accounting of the rents, which have already been considered by the Court in a case which has been prolonged over a period of three years. However, as we have said, we hold that defendant should pay to complainant one-half of the net income from the properties held by them as tenants by the entireties, accounting from May 29, 1953.

*Fifth.* Complainant contended that the decree should have ordered defendant to pay a counsel fee to her attorneys. We concur in her request, although we are not disposed to grant the full amount suggested by the attorneys.

We recognize that while the counsel fee to be allowed by the court in a divorce or separate maintenance suit cannot be based upon the financial ability of the husband, yet the amount of the fee cannot be wholly dissociated from his financial resources, as the fair value of the attorney's services, according to the ordinary factors of labor, skill, time, and benefit, may result in a fee which would be trivial to one client and a crushing burden to another. *France v. Safe Deposit & Trust Co.,* 176 Md. 306, 330, 4 A. 2d 717; *Waters v. Waters,* 191 Md. 436, 441, 62 A. 2d 250.

In *Daiger v. Daiger,* 154 Md. 501, 509, 140 A. 717, where the husband received a salary of $6,000, the Court of Appeals stated that the fee of $1,000 which had been allowed to the wife's attorney for services in the Circuit Court of Baltimore City was reasonable and proper, whereas the fee of $100 allowed him for his services on appeal was not adequate, but that $250 was a reasonable and proper fee for such services.

In this case the Court allowed complainant's attorneys $300 for their services on the first appeal, and $300 for their services on this appeal. However, the Court did not allow them any other fee except $100 at the time the suit was instituted. We have, therefore, decided that they should be allowed an additional fee of $1,000 to

214

compensate them for their services extending over a period of three years in the Court below.

> *Decree affirmed in part and reversed in part, and case remanded for the passage of a decree in conformity with this opinion, with costs to appellant.*