646 A.2d 413

**Jack D. BLAINE**

v.

**Bryna J. BLAINE.**

**No. 150, Sept. Term, 1993.**

Court of Appeals of Maryland.

Aug. 26, 1994.

50

David S. Goldberg (David S. Goldberg, P.A., both on brief), Rockville, for petitioner.

Allen J. Kruger (Kruger, Kovelant & Hollmann, on brief), Laurel, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

This case involves the proper application and interrelationship of Maryland Code (1984, 1991 Repl.Vol., 1993 Cum. Supp.), §§ 11–106 and 11–107 of the Family Law Article. Specifically, we must decide whether a party who was awarded, at the time of divorce, "rehabilitative" alimony for a fixed period may, upon its termination, be awarded alimony for an indefinite period based upon a judgment that circumstances now exist which would render a termination of alimony inequitable. We consider also whether the failure of the formerly dependent spouse to reach an expected income level, with or

without a concomitant increase in the income of the other spouse, is properly a "circumstance" arising subsequent to the initial alimony award that would provide the basis for an indefinite extension of alimony.

Section 11–106 governs the determination of the amount and duration of an alimony award; it provides, in relevant part:

"(a) Court to make determination.—(1) The court shall determine the amount of and the period for an award of alimony.

\* \* \* \* \* \*

"(c) Award for indefinite period.—The court may award alimony for an indefinite period, if the court finds that:

"(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

"(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate."

Section 11–107 provides for the extension of a period of alimony, or the modification of the amount, in certain situations. It provides, in relevant part:

"(a) Extension of period.—[T]he court may extend the period for which alimony is awarded, if:

"(1) circumstances arise during the period that would lead to a harsh and inequitable result without an extension; and

"(2) the recipient petitions for an extension during the period."

## I

Jack D. Blaine and Bryna J. Blaine were married on February 16, 1967. Early in the marriage, Ms. Blaine worked outside the home while her husband completed medical school, an internship and a residency. After the couple's two children were born, Ms. Blaine worked in the home as mother and

homemaker while Dr. Blaine worked as a physician. Difficulties developed in the marriage, and the couple separated in April 1983.

On November 15, 1985, Ms. Blaine was granted an absolute divorce in the Circuit Court for Montgomery County; at that time she was also awarded alimony. As to the alimony award, the court (Beard, J.), in its Memorandum and Order, stated the following:

"[Dr. Blaine] is currently employed as a psychiatrist by the National Institute [of] Mental Health and earns an annual salary in excess of Sixty–Two Thousand Dollars ($62,000.00). For the past few years, [Ms. Blaine] has worked as a teacher's aid[e] during the children's school hours and earns approximately Ten Thousand Dollars ($10,-000.00) annually. She is also presently seeking a master[']s degree, which she anticipates will be completed in two to three years.

*　　*　　*　　*　　*　　*

"Both [Dr. Blaine] and [Ms. Blaine] are in their middle years. Presently both parties have regular incomes, through [Ms. Blaine's] is disproportionately less than that of [Dr. Blaine]. The conduct of [Dr. Blaine] is the basis upon which the marriage has terminated. The parties have been married for eighteen years. At this time each party enjoys good health, both physically and mentally. The primary source of financial support for the maintenance of the family has been provided by [Dr. Blaine]. Based upon the entire record, the evidence and testimony produced by the parties and other witnesses at the hearings in this case with respect to the financial needs and resources of the parties, the ability of each to be wholly or partially self-supporting, the standard of living established during the marriage, the duration of the marriage, contributions, monetary and nonmonetary of each party to the well-being of the family, the . . . circumstances leading to the estrangement of the parties and . . . the dissolution of the marriage, the age and physical condition of the parties, the health and well-being

of the minor children, and having balanced the monetary award with the alimony, child support and fees granted, it is by the Circuit Court for Montgomery County, Maryland, this 15th day of November 1985,

\*     \*     \*     \*     \*     \*

"ORDERED, that Jack D. Blaine pay to Bryna J. Blaine alimony in the amount of Eight Hundred Dollars ($800.00) per month for sixty (60) months beginning December 1, 1985 and on the 15th of each month thereafter, beginning January 15, 1986, and including November 15, 1990, or until the death of either party or the remarriage of Bryna J. Blaine...."[1]

Ms. Blaine timely filed a Motion to Extend and Increase Alimony. In her motion, she stated that Dr. Blaine was now earning more than $140,000 per year, while she was earning approximately $25,000 per year, and thus there was "still a vast disparity of income between the parties in favor of [Dr. Blaine]." She stated that she had "not been able to rehabilitate her condition" and therefore alimony should be extended and increased.

At a July 19, 1991 hearing before a domestic relations master, it was noted that in May 1988 Ms. Blaine had earned a master's degree in health promotion counseling from Trinity College, in Washington, D.C. As Ms. Blaine testified, health promotion counseling was a new field which involved counseling employees to maintain healthy lifestyles, for the purpose of reducing medical costs and, consequently, employers' health-related costs. Ms. Blaine testified that she had expected to make approximately $40,000 a year as a health promotion counselor.

Unfortunately, the career opportunities Ms. Blaine had expected upon graduation did not materialize. She testified that

---

1. In addition to the alimony award, Ms. Blaine received a monetary award of $70,000.00; an award of 29 percent of Dr. Blaine's pension, as, if and when it is paid to him; and exclusive use, possession, and maintenance of the family home for three years.

the field became static, because the economic recession caused employers to discontinue, reduce, or not expand such programs. She had made diligent efforts to find employment, applying for more than a hundred positions in health promotion counseling or general counseling. But she was unable to find a position that equaled or exceeded the income she was earning at the time from her full-time position with the Montgomery County Board of Education, supplemented by two part-time jobs, one teaching Hebrew school once a week, the other serving occasionally as a proctor for the administration of standardized tests.[2] She stated, moreover, that her degree was not the equivalent of a Master of Social Work degree and that she was not qualified to conduct psychological evaluations and treatment. She also testified that she did not have teaching credentials and that she had no prospects for advancement in her current position.

In a December 3, 1991 Order, the master set forth a number of findings, including the following:

"3. [Ms. Blaine] made reasonable efforts to obtain employment in a field for which she trained. She also sought employment in counselling. She received no offer equal to the sum of her part-time jobs.

"4. [Ms. Blaine] has no potential for advancement in her present job.

\* \* \* \* \* \*

"7. [Dr. Blaine] has gross income of $136,750.00 per year before consideration of his tax shelters.

---

**2.** Prior to 1988, Ms. Blaine was employed by the Montgomery County Board of Education part-time as a special education instructional assistant, earning approximately $10,000 per year. From 1988 to February 1991, Ms. Blaine served as a full-time instructional assistant, with an annual salary of $19,443. In February 1991 she secured a position as office assistant in the international student admissions office, with an annual salary of $27,269.

She earned approximately $1,500.00 per year from her position as a Hebrew teacher at Har Shalom Congregation, and approximately $250 per year as a proctor for Educational Testing Service.

"8. [Ms. Blaine] has gross income of $31,000.00 per year from three jobs.

"9. The parties did not anticipate that [Ms. Blaine] would not be able to obtain a job in the field for which she was pursuing her Master's degree at the time of the parties' divorce.

\*     \*     \*     \*     \*     \*

"11. [Ms. Blaine] has made as much progress toward becoming self-supporting as can reasonably be expected; the respective standards of living of the parties are unconscionably disparate.

"12. The lack of jobs in the health promotion counselling field was a change of circumstances and the inability of [Ms. Blaine] to obtain the anticipated income would lead to a harsh and inequitable result without an extension of alimony."

The master recommended that Dr. Blaine's obligation to pay alimony to Ms. Blaine in the previously awarded amount of $800.00 per month "be extended for an indefinite period." Dr. Blaine filed exceptions to the master's recommendations; the circuit court (Ryan, J.) denied the exceptions, affirmed the master's findings and recommendations, and ordered that the alimony payments of $800.00 per month be extended indefinitely.

Dr. Blaine appealed to the Court of Special Appeals; that court held that the circuit court was correct in concluding that there was a "change in circumstances" subsequent to the original alimony award justifying the extension of the award. *Blaine v. Blaine*, 97 Md.App. 689, 706, 632 A.2d 191 (1993). It also held that the trial court did not abuse its discretion in concluding that a "harsh and inequitable result" would occur without the extension. *Id.* at 706–07, 632 A.2d 191. The intermediate appellate court concluded that § 11–107 authorized an extension of alimony for an indefinite term even though indefinite alimony was not awarded at the time of divorce. *Id.* at 707, 632 A.2d 191. Finally, it held that the trial court did not abuse its discretion in finding that Ms.

Blaine was entitled to indefinite alimony. *Id.* at 711, 632 A.2d 191.

Dr. Blaine filed a petition for certiorari on December 13, 1993 which we granted to consider the important issues presented in the case.

## II

Dr. Blaine maintains that the trial court and the Court of Special Appeals erred in their application of § 11–107. He says that the statute does not authorize an award of indefinite alimony following a fixed period of rehabilitative alimony; that the principles of res judicata and collateral estoppel bar a court from awarding indefinite alimony where it had earlier been determined that it was not appropriate; and that such a determination had been made is implicit in that indefinite alimony was not awarded to Ms. Blaine at the time of divorce.

Dr. Blaine further argues that the failure of Ms. Blaine to achieve her particular career goal is not a "change of circumstances" warranting the extension of alimony. He asserts that an extension of alimony should be granted only in extraordinary situations. Moreover, he says, Ms. Blaine's financial circumstances have improved since the original award, and she is now self-supporting. He observes that the principal purpose of the alimony statute is to provide funds for a specific time so that the formerly dependent spouse can acquire skills and training to become self-supporting. He contends that the trial court was clearly erroneous in granting indefinite alimony to Ms. Blaine.

Dr. Blaine suggests that an extension of rehabilitative alimony may not be premised upon his improved economic circumstances, or upon the present existence of an "unconscionable disparity" in the parties' respective standards of living which was not anticipated at the time of divorce. He urges that a former spouse is not entitled to have his or her standard of living "keep pace" with that of the other spouse. He asserts that just as a trial court may not reserve alimony based upon a vague possibility that the incomes of the parties

will become unconscionably disparate, it also may not "retrospectively" award alimony because a disparity has developed subsequent to the divorce proceeding.

Ms. Blaine asserts that the fact that a party may be self-supporting does not preclude a review of whether indefinite alimony is warranted. She observes that, while the principal purpose of alimony may be rehabilitative, the legislature has nonetheless provided for indefinite alimony where appropriate—where the parties' respective standards of living are "unconscionably disparate" and the result would be "harsh and inequitable" if alimony were not extended. She asserts that the respective economic circumstances of the parties, combined with her inability to achieve her expected employment and salary, and accompanying standard of living, were sufficient to meet the statutory requirements providing for extended alimony. She avers that such a determination must be made on a case-by-case basis, and the fact that she is working more than one job and earning just 22.7 percent of Dr. Blaine's salary after five years of rehabilitative alimony indicates that the award of indefinite alimony was appropriate in this case.

Ms. Blaine also argues that the doctrine of res judicata does not foreclose a trial court's further consideration of the issue of alimony if circumstances have changed during the period of rehabilitative alimony. She asserts that the statutory provisions clearly allow for changes in alimony awards subsequent to the original award, and that where indefinite alimony was not awarded originally, it may later be sought under §§ 11–107(a) and 11–106(c) based upon the existence of changed circumstances justifying a new consideration of its appropriateness. She suggests that the failure of an expected change or improvement in the circumstances that existed at the time of divorce may constitute "changed circumstances" justifying a review of the alimony situation.

Finally, Ms. Blaine contends that Dr. Blaine's current income, reflecting his post-divorce increases, is properly considered as a factor in determining whether to modify or extend

alimony. She maintains that the incomes of both spouses must be included among the factors to be considered in determining whether a "harsh and inequitable" result would occur without an extension of alimony. As to this, she says that the court must consider the parties' relative economic situations as they exist at the time of the request. She asserts that consideration of a petition for extension pursuant to §§ 11–107(a) and 11–106(c) is not comparable to an improper reservation of alimony made at the time of the divorce in contemplation of some vague possibility of a future change in circumstances. She concludes that the court did not abuse its discretion in awarding indefinite alimony and asks that we affirm the judgment of the Court of Special Appeals.

### III

Maryland's alimony statute, now codified as §§ 11–101 through 11–111 of the Family Law Article, was enacted by Chapter 575 of the Acts of 1980.[3] It was based, in principle and substance, upon a proposed bill submitted to the legislature by the Governor's Commission on Domestic Relations Laws (the Commission). *See Tracey v. Tracey*, 328 Md. 380, 385, 614 A.2d 590 (1992); *McAlear v. McAlear*, 298 Md. 320, 344–45, 469 A.2d 1256 (1984). The bill represented a significant change in the approach to alimony in Maryland. It had previously been the practice to award alimony for the joint lives of the parties, or until the financially dependent spouse remarried; this practice was based upon the belief that the dependent spouse was entitled to maintain the standard of living which the parties had enjoyed during the marriage. *See, e.g., Brown v. Brown*, 278 Md. 672, 675, 366 A.2d 18 (1976); *Schroeder v. Schroeder*, 234 Md. 462, 463–64, 200 A.2d 42 (1963); *Timanus v. Timanus*, 178 Md. 640, 642–43, 16 A.2d 918 (1940). Underlying the proposed legislation was the belief

---

**3.** The act was originally codified as Maryland Code (1957, 1973 Repl. Vol., 1980 Cum.Supp.) Article 16, §§ 1, 2, 3, and 5, replacing earlier sections so numbered. These provisions were incorporated without substantive change into the current codification.

that "in appropriate cases" the purpose of alimony was "not to provide a lifetime pension but to facilitate a transition for the parties from the joint married state to the separate single one, where ... practicable." The Commission's Report (1980), at 4. Thus, the bill provided generally for the awarding of alimony for a fixed period, while also providing for an award for an indefinite period in certain situations.

As earlier indicated, § 11–107(a)(1) provides that a period of alimony may be extended if "circumstances arise during the period that would lead to a harsh and inequitable result without an extension." Section 11–106(c)(2) provides that a court may award alimony for an indefinite period if "even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate." The language of § 11–107 is retrospective, addressing circumstances that have occurred since the original award; the language of § 11–106 is prospective, in effect requiring that the court make a prediction as to the success of the dependent spouse's efforts to become self-sufficient. We here decide whether the language of § 11–106 may be applied retrospectively, that is, whether the court, in considering an extension of alimony under § 11–107, may support a conclusion that an extension is necessary to avoid a harsh and inequitable result upon a finding that there exists, at the time of the request for extension, an unconscionable disparity in the parties' respective standards of living which would justify an award of indefinite alimony.

The implication in the language of § 11–106(c) that the indefinite alimony award must be made at the time of the divorce is not dispositive. Even where the language of a statute is plain and unambiguous, we may look elsewhere to divine legislative intent; the plain meaning rule is not rigid and does not require us to read legislative provisions in rote fashion and in isolation. *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 463, 597 A.2d 939 (1991). Similarly, we are not required to accept an interpretation based on a possible

inference from the language. While it may be the case that in the majority of situations an award of indefinite alimony will be made, if at all, at the time of the divorce, it does not automatically follow that indefinite alimony awards must be limited to that time alone. As we have said, the alimony statute, in its entirety, renounces an approach based on rote or formula, *Tracey, supra,* 328 Md. at 389, 614 A.2d 590, and we decline to accept an interpretation that would require a rote application of the prospective language of § 11–106(c). We instead look to other sources to divine legislative intent. *See Turrisi v. Sanzaro,* 308 Md. 515, 526–27, 520 A.2d 1080 (1987); *Bledsoe v. Bledsoe,* 294 Md. 183, 189, 448 A.2d 353 (1982). In this regard, the Commission's 1980 Report is appropriately considered, *Tracey, supra,* 328 Md. at 389, 614 A.2d 590; *McAlear, supra,* 298 Md. at 340, 469 A.2d 1256, and we have interpreted the statute as enacting the goals of the Commission with regard to the issue of alimony. *Tracey, supra,* 328 Md. at 389, 614 A.2d 590. The Commission's goal, repeatedly stated, was to vest considerable discretion in the courts to fulfill the aim of the statute, which was, as we defined it in *McAlear, supra,* "to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage." 298 Md. at 348, 469 A.2d 1256.

██ Section 11–106(b) sets forth specific factors that must be considered by the court in determining whether an award of alimony is appropriate.[4] A number of these factors are

---

4. This subsection provides:

*"Required considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

"(1) the ability of the party seeking alimony to be wholly or partly self supporting;

"(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

"(3) the standard of living that the parties established during their marriage;

"(4) the duration of the marriage;

"(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

relevant to the parties' relative financial situations, consistent with the longstanding principle that alimony is an economic concept and awards are based upon the need of the recipient spouse balanced against the ability of the payor spouse to provide support. *See* 1980 Report at 5; *Flanagan v. Flanagan,* 270 Md. 335, 339, 311 A.2d 407 (1973); *Willoughby v. Willoughby,* 256 Md. 590, 593, 261 A.2d 452 (1970); *Brown v. Brown,* 204 Md. 197, 206, 103 A.2d 856 (1954). But, as we observed in *Tracey, supra,* a number of the enumerated factors are clearly equitable in nature, with little or no relation to the economic situations of the parties. 328 Md. at 391–92 n. 3, 614 A.2d 590. These equitable factors include the standard of living during the marriage, the duration of the marriage, the spouses' non-monetary contributions to the well-being of the marriage, and the circumstances leading to the breakup of the marriage, *see supra* n. 3, and must be considered along with the economic issues in making a "fair and equitable" award. § 11–106(b). These concepts, for the most part, were already in existence in Maryland common law, *see, e.g., Blumenthal v. Blumenthal,* 258 Md. 534, 540, 266 A.2d 337 (1970); *Dougherty v. Dougherty,* 187 Md. 21, 33, 48 A.2d 451 (1946), and their inclusion in the statutory language reflected a belief that it would be "contrary to common experience" and equita-

---

"(6) the circumstances that contributed to the estrangement of the parties;

"(7) the age of each party;

"(8) the physical and mental condition of each party;

"(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

"(10) any agreement between the parties;

"(11) the financial needs and financial resources of each party, including:

"(i) all income and assets, including property that does not produce income;

"(ii) any award made under §§ 8–205 and 8–208 of this article;

"(iii) the nature and amount of the financial obligations of each party;

"(iv) the right of each party to receive retirement benefits; and

"(12) whether the award would cause a spouse who is a resident of a related institution as defined in § 19–301 of the Health–General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur."

ble principles to expect a court not to consider them in regard to making an award of alimony.[5] 1980 Report at 6. This idea reflects the Commission's stated belief that a court must be vested with the discretion necessary to tailor its decision upon a sense of fairness. 1980 Report at 2.

In this regard, the Commission, while constructing the proposed bill upon the proposition that the primary purpose of alimony is rehabilitative, nonetheless provided a statutory mechanism whereby a court, in its discretion, could grant indefinite alimony. 1980 Report at 5. The Commission recognized the problem of determining when indefinite alimony was appropriate, where such a determination was based upon an imprecise concept of fairness, and concluded that the problem would best be resolved "by leaving it within the sound discretion of the Court." It said, "In our judgment, this case-by-case resolution is preferable to any other...." 1980 Report at 7.

In *Tracey, supra,* we recognized the "wide latitude" conferred by the statute upon trial courts in assessing requests for indefinite alimony. 328 Md. at 394, 614 A.2d 590. We referred to the Commission language that alimony decisions based on disparate standards of living must be resolved on a case-by-case basis, and we declined to adopt a "hard and fast rule" regarding a disparity in income between the parties. *Id.* at 393, 614 A.2d 590. In *Tracey,* we held also that the language of § 106(b)(11)(i), which set forth, as a factor to be considered in the alimony award, "all income" of the parties, did not require that the formerly dependent spouse's income from a part-time job be considered, where she already was

---

5. The concept of "fault," now embodied in § 11–106(b)(6), existed prior to 1980 as an automatic forfeiture of alimony in certain circumstances: if there existed grounds for divorce against the party seeking alimony, that party was not entitled to receive it. *See Bender v. Bender,* 282 Md. 525, 528–29, 386 A.2d 772 (1978). The automatic forfeiture no longer exists; however, the concept was incorporated in the statutory language, "the circumstances that contributed to the estrangement of the parties," as one factor to consider in reaching an equitable alimony determination. *See* Commission Report at 6.

working full-time and had taken on the part-time job in order to supplement her income. We interpreted § 11–106 "as enacting the Commission's stated aim of judicial flexibility" and we "reject[ed] ironclad definitions of statutory language seen in isolation." *Id.* at 389, 614 A.2d 590.

■ We apply the same principles to this case. Dr. Blaine suggests that where a court does not order indefinite alimony at the time of divorce, pursuant to § 11–106, a court may not "revisit" the indefinite alimony issue when considering an extension of alimony pursuant to § 11–107. We disagree.

■ As stated above, we reject a mechanical application of the statute that would limit the discretion of the court to fashion an appropriate alimony award. The fact that § 11–107 does not expressly provide for the awarding of indefinite alimony pursuant to an extension of rehabilitative alimony does not mandate against an interpretation that such an award is authorized by the statute. Our prior decisions are consistent with this interpretation. In *Turrisi, supra,* 308 Md. at 528, 520 A.2d 1080, we held that the alimony statute, which was silent on the subject of reservation of alimony, did not abrogate the longstanding power of the courts to reserve as to the question of alimony. Under the common law, Maryland courts had long had the power to reserve jurisdiction as to an award of alimony, thus enabling them to make awards long after the granting of divorces. *Id.* at 522, 520 A.2d 1080, and cases cited therein. This rule provided an exception to another longstanding rule—that the right to claim alimony was extinguished at the time of the dissolution of the marriage. *Id.* at 521, 520 A.2d 1080. In *Turrisi,* we recognized that the legislative intent clearly favored rehabilitative alimony. But, we said:

> "The concepts of rehabilitative alimony for a definite time, the desirability of each spouse becoming self-supporting, the undesirability of alimony as a lifetime pension, and the use of indefinite alimony only in exceptional circumstances do not mandate the elimination of the power to reserve.

"For example, facts before a court may demonstrate no present basis for either rehabilitative or indefinite alimony. But those same facts may show that a highly probable basis for awarding one or the other will exist in the immediate future. Under such circumstances, we see no reason why reservation would be inconsistent with the purposes of the Act. Indeed, under such circumstances, reservation would be consistent with the Act's overall purpose ... to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage." (citations omitted). 308 Md. at 527, 520 A.2d 1080.

When seeking legislative intent, we consider not only the objectives and purpose of the enactment, but the consequences resulting from one construction rather than another. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). To construe §§ 11–106 and 11–107 as forbidding the awarding of indefinite alimony pursuant to an extension of alimony would be inconsistent with the statute's broad purpose to provide for the appropriate degree of spousal support. We hold, therefore, that it is within the discretion of the court to award indefinite alimony, where appropriate, when an extension of alimony is made pursuant to § 11–107.

## IV

We turn now to the proper application and interrelationship of §§ 11–106 and 11–107 with regard to the awarding of indefinite alimony under § 11–106(c) pursuant to an extension of alimony under § 11–107(a). In this regard, we are mindful of the important principle underlying the alimony statute, namely, that the prior concept of alimony as lifelong support enabling the dependent spouse to maintain the standard of living enjoyed during the marriage has largely been superseded by the modern view that the dependent spouse should be required to become self-supporting, even if that results in a reduced standard of living. *See Tracey, supra,* 328 Md. at 391, 614 A.2d 590; *Holston v. Holston,* 58 Md.App.

308, 321, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984).

We have interpreted § 11–106(c)(2) as permitting the granting of indefinite alimony even where a spouse may become self-supporting but there nevertheless will exist an "unconscionable disparity" between the living standards of the parties. *See Tracey, supra,* 328 Md. at 392, 614 A.2d 590.[6] At the same time, we concur with the Court of Special Appeals' observation in *Cole v. Cole,* 44 Md.App. 435, 443, 409 A.2d 734 (1979), that the formerly dependent spouse ordinarily is not entitled to have his or her standard of living "keep pace" with that of the other spouse after the divorce, or to share in the other spouse's future accumulations of wealth. But we also have said that the provisions for indefinite alimony serve as a restraint upon the doctrine of rehabilitative alimony, protecting the formerly dependent, and less financially secure, spouse from too harsh an existence after the divorce. *Tracey, supra,* 328 Md. at 391–92, 614 A.2d 590. Therefore, in appropriate cases, a court, when considering the extension of rehabilitative alimony, may make an award of indefinite alimony where it finds an unconscionable disparity which would lead to a harsh and inequitable result without an extension.

Of course, prerequisite to a determination that there is a basis for indefinite alimony is a finding that there exists a basis for any extension of alimony, fixed-term or indefinite. Section 11–107(a) provides that a court may extend the period for which alimony is awarded if *"circumstances arise* during the period that would lead to a harsh and inequitable result without an extension." (emphasis added.) Thus, for an extension of alimony to be appropriate, there must be a change in the respective circumstances of the parties since the date of the original award which bears a substantial relation to the factors which were considered at the time of the original award. This is consistent with the

---

6. Because it is not here contended that § 11–106(c)(1) is applicable, we need not engage in an analysis of its application.

principle that a court may not relitigate matters that were or should have been considered at the time of the original award; such matters are res judicata in a subsequent proceeding. *See Stansbury v. Stansbury,* 223 Md. 475, 477, 164 A.2d 877 (1960). In that regard, a court may not consider a claim for alimony subsequent to the divorce if it was not awarded, or if jurisdiction to award it was not reserved, at the time of the divorce. *See Turrisi, supra,* 308 Md. at 521–22, 520 A.2d 1080. It is, however, beyond question that a court is free to consider an extension of alimony based upon circumstances which arise subsequent to the original award. We agree with the intermediate appellate court that indefinite alimony does not constitute a claim separate from rehabilitative alimony; the two terms express concepts of duration. *See Blaine, supra,* 97 Md.App. at 707–08, 632 A.2d 191; *Cousin v. Cousin,* 97 Md.App. 506, 518–19, 631 A.2d 119 (1993). Thus, contrary to Dr. Blaine's contention, the principles of res judicata and collateral estoppel do not bar consideration of an award of indefinite alimony as long as new circumstances exist that would entitle the recipient to seek an extension of alimony.

Once a court finds the existence of new circumstances which support an extension of alimony under § 11–107, as well as a possible basis for an award of indefinite alimony, the court must determine whether an indefinite extension would be necessary in order to avoid a harsh and inequitable result. In making this determination, the court must continue its analysis under the appropriate prong of § 11–106(c).

We are here concerned with the application of § 11–106(c)(2). Based upon the principles discussed above, it is plain that the existence of a significant disparity in the parties' standards of living is not enough, in itself, to warrant the indefinite extension of alimony to the recipient spouse. While the mathematical comparison of the incomes of the parties is the starting point of the analysis, it is never conclusive. As the statute provides, the disparity must be "unconscionable," a determination which requires the application of equitable considerations on a case-by-case basis, consistent with the trial

court's broad discretion in determining an appropriate award. As neither § 11–107 nor § 11–106(c) provides specific guidance with regard to making this determination, the court must look to the factors under § 11–106(b), which provide guidance in determining an appropriate award.

In determining whether an indefinite extension is appropriate, a court may not allow the relitigation of the § 11–106(b) factors considered at the time of the original award. However, the findings as to § 11–106(b) made at the time of the initial award should be reviewed in determining whether, given the circumstances that have arisen since the award, an extension is now appropriate. Thus, in determining whether the disparity in the parties' respective standards of living is unconscionable and an extension is necessary to avoid a result that would be harsh and inequitable, the court should review earlier findings as to the standard of living that the parties established during their marriage (§ 11–106(b)(3)); the duration of the marriage (§ 11–106(b)(4)); the contributions, monetary and nonmonetary, of each party to the well-being of the family (§ 11–106(b)(5)); and the circumstances that contributed to the estrangement of the parties (§ 11–106(b)(6)). The application of these earlier findings to the present income equation provides a framework for the application of equitable principles, consistent with the stated goals of the Commission Report and implicit in the language of § 11–106(c)(2) and § 11–107(a)(1).

As to the appropriate income equation, we address Dr. Blaine's contention that it was inappropriate for the court below to consider his current salary when making the determination as to "unconscionable disparity." He suggests that the appropriate comparison is between Ms. Blaine's current salary and his salary at the time of the divorce. We disagree.

Unlike § 11–106(b), which provides guidance in the form of myriad factors for determining the appropriate alimony award, see supra n. 3, § 11–107 provides, as to an extension of the award, only that "circumstances" must have occurred which would lead to a "harsh and inequitable" result without

an extension. It does not limit the relevant circumstances to those occurring with regard to the formerly dependent spouse alone. While, in most cases, an increase in the income of the payor spouse would not constitute, in itself, a circumstance that would warrant an extension of alimony, *see Cole, supra,* 44 Md.App. at 443–44, 409 A.2d 734, it is still appropriately considered as a factor in evaluating the formerly dependent spouse's request for the extension. Section 11–107, as we have said, involves an equitable determination, requiring an examination of the relative situations of the parties. This is consistent with the earlier stated principle that alimony is an economic concept and awards are based upon the need of the recipient spouse balanced against the other spouse's ability to provide support. *See* 1980 Report at 5; *Flanagan, supra,* 270 Md. at 339, 311 A.2d 407; *Willoughby, supra,* 256 Md. at 593, 261 A.2d 452; *Brown, supra,* 204 Md. at 206, 103 A.2d 856. To consider an increase in the salary of the formerly dependent spouse without also considering an increase in the salary of the other spouse would, in our minds, be profoundly unfair. It would also provide, in many cases, a highly inaccurate picture of the parties' relative situations. Thus, the current financial situations of the parties are appropriately considered, pursuant to § 11–106(b)(9) and (11). *See* n. 3, *supra.*

We next address Dr. Blaine's contention that, because alimony and the monetary award are significantly interrelated, the decision to award one or both must be made after considering them together. As we stated in *Turrisi, supra,* with regard to a reservation of alimony: "The close relationship between alimony and monetary awards has often been recognized. If a case involves both a monetary award and alimony, reservation of alimony might be impracticable; at the very least, this situation would demand the most careful exercise of discretion." 308 Md. at 529, 520 A.2d 1080 (citations omitted). Here, however, unlike the situation involving a reservation of alimony, the issue of alimony has already been considered in relation to the monetary award. The determination here involves whether the original alimony award should be extended in light of circumstances that have arisen since the original

alimony and monetary awards. While the monetary award is one of the § 11–106(b) factors that the court should consider with regard to the appropriateness of an extension, the court is not required, contrary to Dr. Blaine's suggestion, to reconsider the appropriateness of the monetary award.

As to other § 11–106 factors, the application of § 11–106(b)(1) and (2) considerations with regard to the formerly dependent spouse's ability to be self-supporting is, of course, implicit in the language of § 11–106(c)(2). The remaining factors, § 11–106(b)(7), (8) and (10), may also be considered, as appropriate, in reaching a determination as to whether an extension is warranted in a particular case.

V

■ A trial court has broad discretion in making an award of alimony, *Wallace v. Wallace,* 290 Md. 265, 282, 429 A.2d 232 (1981); an alimony award will not be disturbed unless the court abused its discretion or was clearly wrong in making the award, *Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982). The extension of alimony in the present case was based upon the reasoning that (1) Ms. Blaine's inability to start a new career was a "change in circumstances" which occurred subsequent to the original award and which provided the basis for a review of the alimony situation, and, (2) that, under the new circumstances, an extension of alimony was necessary to prevent a harsh and inequitable result.

■ When the legislature has not defined a term, it ordinarily should be given its natural and generally understood meaning, in the absence of evidence to the contrary. *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990). As we interpret the language of § 11–107(a), providing for an extension of alimony if "circumstances arise" which would lead to a harsh and inequitable result, as the words are generally defined, the subsection provides that if a combination of facts comes into being to create a situation in which an extension is necessary, the court may grant the extension. *See* Webster's Third New International Dictionary (1981). In this regard,

Ms. Blaine's completion of her degree program, which was anticipated at the time of the original award, combined with her failure to gain employment in her new field, which apparently was not anticipated, could constitute a combination of facts that arose during the period of the original award of alimony. We think these facts provided a sufficient basis for a review of alimony under § 11–107.[7]

■ Whether these facts appropriately form the basis for an award of indefinite alimony is, of course, a separate issue. As we stated earlier, a fundamental principle underlying the alimony statute is that a court must be vested with the discretion necessary to make a singularly appropriate award in each situation. Just as fundamental, however, is the statutory preference for rehabilitative over indefinite alimony. Thus, while a court has the power to award indefinite alimony when extending an original award of alimony, that power should be exercised with considerable restraint.

■■ When the indefinite extension of alimony is based upon a judgment that the respective standards of living of the parties are unconscionably disparate, the court must be satisfied that the party seeking alimony cannot reasonably be expected to make further progress toward becoming self-supporting. In this regard, we observe that an extension of alimony for a fixed rather than indefinite term not only provides the recipient spouse with additional time to seek employment that will afford a higher standard of living, but also provides the incentive to continue to seek such employment. Here, however, the trial judge adopted the Master's factual finding that Ms. Blaine had made as much progress toward becoming self-supporting as reasonably could be expected and that the respective standards of living of the

---

7. Dr. Blaine also contends that the court erred in affirming the master's finding that a harsh and inequitable result would occur without an extension of alimony because that determination was based upon a comparison of the parties' incomes at the time of the request for the extension. As we stated above, a court should consider the relative incomes of both parties as a factor in determining whether an extension of alimony is appropriate; the court below was correct in doing so.

parties were unconscionably disparate. In addition, there was a factual finding that the lack of jobs in the health promotion counseling field was a "change of circumstances" and that Ms. Blaine's inability to obtain the anticipated income would lead to a harsh and inequitable result without an extension of alimony. In the circumstances of this case, we cannot conclude that the trial judge abused his discretion in extending the alimony award for an indefinite period.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*

BELL and CHASANOW, JJ., dissent.

BELL, Judge, dissenting.

The majority today holds that, upon a motion for extension of rehabilitative alimony, *i.e.*, alimony ordered for a definite period of time, a trial court may order indefinite alimony, where, since the divorce, the income of the payor former spouse has doubled and that of the payee former spouse has not kept pace. This is an extraordinary and unwarranted proposition, given the statutory scheme promulgated by the Legislature. In order to achieve that result, the majority reaches another extraordinary, and equally unwarranted, conclusion: "the failure of the formerly dependent spouse to reach an expected income level, with or without a concomitant increase in the income of the other spouse, is properly a 'circumstance' arising subsequent to the initial alimony award that would provide the basis for an indefinite extension of alimony." Majority op. at 55. More important, as to the latter, as we have already indicated, the circumstance warranting consideration of the motion having been established, it is, in fact, the increase in the other spouse's income against which the formerly dependent spouse's circumstances are compared and on the basis of which it will be determined whether the respective standards of living of the parties are unconscionably disparate. I respectfully dissent.

The statutory scheme chosen by the Legislature makes clear that it contemplated that, ordinarily, an alimony award would be rehabilitative—for a fixed time—and designed to be a bridge between divorce and self-sufficiency by "provid[ing] an opportunity for the recipient [spouse] to become self-supporting." Report of the Governor's Commission on Domestic Relations Laws (1980) at 2. *See* Maryland Code (1984, 1991 Repl.Vol.) §§ 11–106 & 107 of the Family Law Article. It is only after the statute refers to, and prescribes that, "[t]he court shall determine the amount of and the period for an award of alimony," § 11–106(a)(1), and sets out the required considerations going into the determination of a fair and equitable award, § 11–106(b), that the statute even mentions an award of indefinite alimony. *See* § 11–106(c). And, even then, it makes clear that such an award may be made only if certain rather extraordinary circumstances are found by the court to exist. *Id.* It is in this context that section 11–107 provides for the extension of the period during which alimony is to be paid, § (a), and for the modification of the amount. § (b). This is consistent with the report of the Governor's Commission, Commission Report at 4, upon which the statute is based. *See Tracey v. Tracey,* 328 Md. 380, 391–92, 614 A.2d 590, 596 (1992). It is also consistent with the decisions of this Court that have considered the issue. *Tracey, supra,* 328 Md. at 391, 614 A.2d at 596; *Turrisi v. Sanzaro,* 308 Md. 515, 524–25, 520 A.2d 1080, 1084–85 (1987); *Kline v. Kline,* 85 Md.App. 28, 51, 581 A.2d 1300, 1311, *cert. denied,* 322 Md. 240, 587 A.2d 246 (1991), *appeal after remand,* 93 Md.App. 696, 614 A.2d 984 (1992); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 531–32, 497 A.2d 485, 507–08, *cert. denied,* 305 Md. 107, 501 A.2d 845 (1985); *Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459, 465–66 (1984), *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984).[1]

---

**1.** The Report of the Governor's Commission on Domestic Relations Laws (1980) summarized its position with respect to alimony, as follows:

With respect to the period of time that should be provided for the payment of alimony, the Commission has chosen the following ap-

Indeed, the statutes are clear and unambiguous, admitting of but one construction. It is well settled that the inquiry into the Legislature's intention in enacting a statute begins, and ordinarily ends, with the words of the statute, *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946, 950 (1993), considered, however, in light of the context, meaning "related statutes, pertinent legislative history and 'other material that fairly bears on the ... fundamental issue of legislative purpose or goal....'" *Popham v. State Farm Mutual Insurance Company,* 333 Md. 136, 148, 634 A.2d 28, 34 (1993) (quoting *GEICO v. Insurance Commissioner,* 332 Md. 124, 131–32, 630 A.2d 713, 717 (1993)). Where the words of the statute are clear and unambiguous, it is ordinarily unnecessary to go further. *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991). Of course, when construing a statute, we give its words their ordinary and common meaning. *Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989).

The majority does not disagree with these principles. It recognizes, at least implicitly, that the language of the statutes at issue is clear and unambiguous; however, it refuses to give

---

proach as best meeting the requirements of fairness, definiteness, and facility of administration:

(a) The award of alimony in the ordinary case should be for a specific time, and that time should be stated in the Order or Decree making the award. Preferably, that time should be fixed in relation to a specified program or goal on the part of the recipient party that will lead to self-sufficiency before that time.

(b) The court should have the power to extend that time, under certain circumstances, to avoid a harsh and inequitable result.

The Commission believes that a fixed time, at the end of which the parties' financial ties in regard to alimony would "self destruct," has the merits of (1) letting the parties know immediately where they stand, (2) stimulating the parties and the Court to consider the problem of attaining self-sufficiency in time to act to resolve them, and (3) avoiding the need for further Court appearances and additional litigation. For those extraordinary situations, where the time imposed by the Court is insufficient without the fault or responsibility of the recipient party, there would remain power in the Court to review the situation and act on the basis of that review.

*Id.* at 4.

effect to the plain meaning and unambiguous language of § 11–106, preferring to "look elsewhere to divine legislative intent." Majority op. at 64. Thus, while acknowledging that the implication of the statutory scheme is that indefinite alimony must be made at the time of divorce, the majority purports to decline to apply language in rote fashion. Majority op. at 65.

Indefinite alimony and rehabilitative alimony are usually mutually exclusive; the award of one, as for example, rehabilitative alimony, necessarily precludes the award of the other for the same period.[2] The requirement that the court determine the amount and duration of an alimony award, *see* § 11–106(a), pursuant to a bill of complaint for alimony or as part of a decree granting an annulment, a limited divorce or absolute divorce, *see* section 11–101(a), and consistent with the factors enumerated in section 11–106(b), forces the trial court to come to grips with which form of alimony most applies to the circumstances of the parties before the court. As we have seen, this is consistent with the overall statutory scheme. It is also consistent, more particularly, with the requirements of section 11–106(b) and (c).

Although the factors enumerated in section 11–106 pertain to the duration and the amount of the alimony award, some, *i.e.,* "(1) the ability of the party seeking alimony to be wholly or partly self-supporting; (2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment; . . . (7) the age of each party; (8) the physical and mental condition of each party; [and] (9) the ability of the party from whom alimony is

---

2. This is not a case in which the trial court predicts that, ultimately, indefinite alimony will be required, but recognizes that the achievement of maximum self-sufficiency requires that a greater amount of alimony be paid initially, and so structures the indefinite alimony, *albeit* calling it first, rehabilitative and, then, indefinite, in order to achieve that result. *See Coviello v. Coviello,* 91 Md.App. 638, 605 A.2d 661 (1992). Such an approach is not, however, necessarily inconsistent with the approach that I take in this case.

sought to meet that party's needs while meeting the needs of the party seeking alimony," are more directly addressed to the durational aspect. Of these, factors (1), (2) and (9) are of particular significance, factors (7) and (8) being merely an aspect of the other three. They involve, and require, the assessment and prediction of the needs of the formerly dependent spouse and the ability of the payor former spouse to meet those needs. This is to be done, as a threshold matter, since neither amount nor duration can be determined until, and unless, the goal to be achieved has already been defined. It is also for this reason that factor (3), "the standard of living that the parties established during their marriage," is also important and instructive. Implicitly, requiring that determination to be made at the outset ensures that there is a standard against which the needs of the formerly dependent spouse and the ability of the payor former spouse to meet those needs can be measured. What the court seeks to do, for the benefit of both parties, is to approximate, as closely as possible, the standard of living that the parties enjoyed during the marriage. It then has to decide whether that standard can be attained by the formerly dependent spouse after the divorce. It makes that determination by assessing the effect of providing the formerly dependent spouse with the opportunity, where possible, to acquire skills or improve his or her education. If the court concludes that self-sufficiency can be achieved—the dependent party could maintain, on the basis of his or her own resources, roughly that standard the court has determined, based on the circumstances of the marriage and existing at the time of divorce, to which he or she has become accustomed—it orders rehabilitative alimony for the period necessary to its attainment. Where, however, the court determines that it is not possible for the dependent spouse to achieve that level of self-sufficiency on his or her own, it orders indefinite alimony, calculated in an amount which the payor spouse can pay and which most closely achieves the goal.

Section 11–106(c) thus provides for the award of alimony for an indefinite period when "the party seeking alimony will have

made as much progress toward becoming self-supporting as can reasonably be expected, [but] the respective standards of living of the parties will be [nevertheless] unconscionably disparate." The decision to award indefinite alimony is not inconsistent with, or different in kind from, the threshold eligibility decision referenced in section 11–106(b); rather, the decision contemplated by section 11–106(c) is but an extension of that required by section 11–106(b), which requires simply a refinement of some of the subsection (b) considerations. Rather than some new consideration, it contemplates that the court will assess, first, the dependent former spouse's ability to become wholly or partially self-sufficient and then whether, in light of the previously determined standard of living enjoyed by the parties during the marriage, that party can realistically achieve self-sufficiency without unconscionable disparity. Section 11–106(c), in short, requires the court to predict the future of the parties and to do so in light of its determination of the standard of living the parties enjoyed during the marriage. The prediction of the dependent former spouse's future ability to achieve self-sufficiency takes the form of a prediction of his or her future standard of living which must be compared with that previously determined to have been enjoyed during the marriage.

Once the court decides which option—rehabilitative or indefinite alimony—to adopt, it follows that the option not chosen is rejected. The decision is final, which if not reversed on appeal, is binding on the parties and is not thereafter subject to reconsideration.

As we have seen, the majority recognizes that § 11–106(c) is phrased prospectively, but, it nevertheless concludes that it "may be applied retrospectively ... [to] support a conclusion that an extension [of alimony pursuant to § 11–107] is necessary to avoid a harsh and inequitable result upon a finding that there exists, at the time of the request for extension, an unconscionable disparity in the parties' respective standards of living which would justify an award of indefinite alimony." Majority op. at 64. To reach this conclusion, it ignores the plain language of the statute in favor of "other sources to

divine legislative intent." Majority op. at 65. Thus, it relies on the Governor's Commission Report and its stated goal of vesting considerable discretion in the courts to fulfill the statute's goal "to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage." *Id.* (quoting *McAlear v. McAlear*, 298 Md. 320, 348, 469 A.2d 1256, 1271 (1984)). It also relies upon the fact that several of the factors set out in section 11–106(b) are equitable in nature, the Commission's recognition that indefinite alimony entitlement should be determined on a case-by-case basis, this Court's recognition in *Tracey* that section 11–106, consistent with the Governor's Commission's aims, sought to achieve judicial flexibility in the award of alimony, and our previous rejection of a mechanical application of a statute which would limit the discretion of the court to fashion an appropriate award. Majority op. at 66–67.

The achievement of equity and flexibility is not furthered by permitting the trial court, on the petition of a formerly dependent spouse pursuant to § 11–107, to revisit the duration of alimony issue long after it has determined that the appropriate form of alimony is rehabilitative. The legislative scheme, consistent with that proposed by the Governor's Commission, provides all of the flexibility and equity necessary. Just as important, it provides that flexibility and equity at the threshold—at the point where the court must decide between rehabilitative and indefinite alimony. Moreover fairness and equity are not compromised by confining the option to that stage. When the trial judge's prediction is proven, factually, to have been inaccurate—that rehabilitation cannot be achieved in the time predicted—section 11–107 affords the trial judge the means and opportunity to correct it. It does so by permitting the court, upon a showing that it would otherwise be a harsh and inequitable result, to extend the period of time in which the formerly dependent spouse's rehabilitation is to occur.

Section 11–107, by its very terms, and as indicated by its place in the statutory scheme was never intended to be a mechanism whereby the court is enabled to reverse a judg-

ment previously made, final when made, and not appealed or, if appealed, not reversed on appeal. In other words, § 11–107 was never intended to provide the formerly dependent spouse with a second opportunity to prove what he or she was unable to prove the first time—that he or she is entitled to indefinite alimony. *See Thomasian v. Thomasian*, 79 Md.App. 188, 195, 556 A.2d 675, 678 (1989). But that is precisely what the majority opinion allows and, indeed, encourages.

Under the majority's holding, the goal of the Governor's Commission, to restructure alimony so that it is not a lifetime pension, is thwarted. By permitting a party to establish that the trial court's prediction that rehabilitative alimony was required in a given case was not accurate, what started out as rehabilitative alimony not only can, but in subsequent cases will, become a lifetime pension. Just as disturbing is the fact that the predicate for that lifetime pension will not be the standard of living of the parties during the marriage, as measured by the wealth they amassed during the marriage, but the post-marriage fortunes of the payor former spouse. Under the majority's holding, it would be appropriate for the trial judge to award alimony for an indefinite time if the payor former spouse were to hit the lottery, settle a lawsuit involving personal injury resulting from an accident occurring subsequent to divorce, inherit funds after the divorce, or, as in this case, increase his or her earnings significantly. It is my understanding that the alimony laws were designed to distribute equitably, among the parties, the fruits of the marriage and to ensure, as much as possible that the dependent spouse not slip too far below the standard of living that he or she helped to establish and not to redistribute the gains of one of the parties, made subsequent to and, perhaps, fortuitously after, the divorce.

Moreover, under the majority's view, there is little incentive for the dependent spouse to seek to become self-sufficient; indeed, there may be a disincentive. So long as the payor former spouse is doing well or can be expected to do well, the dependent former spouse would be well advised not to reach maximum self-sufficiency; he or she, under this opinion, would

be wise to avoid achieving maximum self-sufficiency because if he or she does not and the other party increases his or her income significantly, then a sufficient change in circumstances will have occurred and the court's discretion to award indefinite alimony again will be engaged.

CHASANOW, J., joins in the views expressed herein.